Michael REED, Plaintiff,

v.

UNITED STATES of America; and
Department of the Army,
Defendants.

Civ. No. F 81–164.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 16, 1984.

John F. Lyons and James P. Fenton; Barrett, Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., Jennifer Payton, Asst. Dist. Counsel, Dept. of the Army, Louisville, Ky., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant, United States of America, Corps of Engineers', May 24, 1983 "Motion for Summary Judgment." Plaintiff responded to that motion on August 4, 1983 whereupon defendant United States filed its reply on August 31, 1983. A supplemental response to defendant's motion for summary judgment was filed by plaintiff on November 2, 1983. For the reasons set forth below, defendant's motion for summary judgment will be granted.

### Facts

Taken in the light most favorable to the non-moving party (here plaintiff) and accepting the allegations as true, *see e.g. Barbian v. Panagis,* 694 F.2d 476, 478 (7th Cir.1982), the relevant facts are as follows.

Plaintiff, Michael Reed, was severely injured in a mishap at the Huntington Reservoir on July 2, 1979. On that date, Gary Collins, a friend of plaintiff, asked the plaintiff to go water skiing. They met two other friends, Dave Waldon and Dan Hicks, at the Huntington Reservoir. The four men launched a seventeen-foot aluminum motor boat belonging to Waldon and Collins from the Kilsoquah boat ramp between 5:30 and 6:00 p.m.

Collins drove the boat out of the idle zone, whereupon plaintiff began to pilot the boat. Plaintiff drove around for approximately five minutes in order to warm up the engine. At about this time a discussion ensued among the occupants of the boat as to who would go ashore since the boat was not powerful enough to pull a skier with three persons aboard. By this time, plaintiff had shut off the boat motor, and the boat was then about forty feet from shore. After the boat drifted to a point approximately thirty feet from shore, plaintiff announced that he would be the one to go ashore.

Plaintiff dove from the boat into the water, the result of which proved tragic. Upon diving into the water plaintiff's head struck a gravel-sand bar and he was immediately paralyzed. Plaintiff's companions immediately noticed his difficulty and rescued him from drowning. Plaintiff was placed back in the boat and taken to the Kilsoquah boat ramp where an emergency vehicle was summoned. Despite treatment, the plaintiff has never recovered movement below his armpits, nor does he have any movement in his fingers.

The Huntington Reservoir was constructed pursuant to the Flood Control Act of 1958, Title II of Public Law No. 85–500,

under the supervision of the United States Army Corps of Engineers. The Corps of Engineers acquired over eight thousand acres of real estate near Huntington, Indiana for the purpose of constructing a flood control pool, public use facilities and wildlife management areas. Though flood control was the primary purpose of the construction of the Huntington Reservoir, recreational use was also an intended benefit including boating, fishing, swimming, and water skiing. It was estimated that within five years of project completion, two hundred twenty-five thousand annual visitors could be expected to attend the Reservoir and that an ultimate visitation of eight hundred seventy thousand was expected within fifty years of the project completion.

The Reservoir area was cleared pursuant to a contract dated June 26, 1968 between the Army Corps of Engineers and the Applachian Contracting Company. Applachian Contracting Company was to remove the Meridian Road bridge which crossed the Wabash River. It is alleged that Applachian failed to remove a significant portion of the roadway south of the actual bridge structure. The earthen embankment which led up to the bridge was left intact since it was considered a part of the terrain and not a structure as defined in the Corps of Engineers guide specifications.

Almost all of the Huntington Lake project area was leased to the State of Indiana, Department of Natural Resources, on July 1, 1973 under a long-term lease which was to end June 30, 2013. Under the terms of the lease, the lessee was required to administer and maintain the premises in accordance with the Corps of Engineers "Master Plan" and general development plan. A Project Safety Plan and a Project Resource Management Plan were made a part of the Master Plan and were applicable to the Huntington Lake project. The Huntington Reservoir was formally opened up to the public in the spring of 1971.

As things turned out, the water over the Meridian Road embankment is, at points, deceptively shallow. At the point where plaintiff exited the boat, the water was approximately two feet deep. Because the water was murky, plaintiff was unable to discover the presence of the embankment. Other parts of the area, which are also approximately thirty feet from the shore, are quite deep.

Prior to the accident, plaintiff had only been to the Huntington Reservoir area to water ski on two occasions in 1978 and on three or four occasions in 1979. He had never skied in the area in 1978 where the accident occurred, and on one occasion in June of 1979, he dove out of a boat on the south side of the Reservoir near the east end about thirty to forty feet from shore and was able to swim to shore since the water was deep. Plaintiff had observed people swimming at various points around the Reservoir, as well as around boats. Plaintiff alleges that he had never seen any signs prohibiting swimming though it appears that a "No Swimming" sign was placed by the State of Indiana at the Kilsoquah boat ramp, as well as a sign posted by the Corps of Engineers which indicated that boaters were to obey certain regulations. Notwithstanding these admonitions, plaintiff asserts that he had no idea nor any knowledge that the old Meridian Road bed and embankments went through the Reservoir under the water.

As indicated, plaintiff had been invited to go water skiing by Gary Collins. Either Collins, and/or Waldon, had paid $5.00 for an annual permit allowing them to launch their boat at the Kilsoquah boat ramp earlier in the year.

Based upon the foregoing, the defendant United States of America, Army Corps of Engineers, has moved for summary judgment notwithstanding the tragic events which led to plaintiff's condition.

*Discussion and Legal Analysis*

Plaintiff's amended complaint as it relates to the defendant United States [1] alleg-

---

**1.** Plaintiff originally filed suit against the United

States of America, the Department of the Army,

es a cause of action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., with jurisdiction invoked pursuant to 28 U.S.C. § 1346. In Count V, plaintiff also asserts that this court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

With respect to the Federal Tort Claims Act allegations, the United States is liable for injury under circumstances "where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b), 2674. In this case, since the accident occurred in Indiana, the applicable law with respect to the Federal Tort Claims Act allegation is that of the State of Indiana. *See Davis v. United States,* 716 F.2d 418, 423 (7th Cir. 1983). As for the admiralty claim, 28 U.S.C. § 1333(1) gives federal district courts exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); *see Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 2656, 73 L.Ed.2d 300 (1982).

While certain substantive claims in this case are governed by Indiana law, and general federal law governs the admiralty claim, the procedural aspects are, of course, governed by federal law. Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). The burden of proof is, of course, on the party moving for summary judgment and consequently all reasonable inferences as to the existence of a genuine issue of a material fact are drawn in favor of the non-moving party. *Peoples Outfitting Co. v. General Electric Credit Corp.,* 549 F.2d 42 (7th Cir.1977); *Kennett-Murray Corp. v. Bone,* 622 F.2d 887 (5th Cir.1980); *generally* C. Wright, *Law of Federal Courts,* 493–5 (3d ed. 1976). Further, "[i]n order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact." *Kennett-Murray, supra,* at 892.

Taking the foregoing principles together, it can be said that the proper scope of inquiry under Rule 56 requires the answering of two essential questions: "First, is there any genuine issue as to any material fact? Second, if there is no genuine issue of fact, then, viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, is the movant entitled to prevail as a matter of law?" *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540 (9th Cir.1975).

Utilizing the above considerations, this court is of the view that the factual disputes, if any, do not relate to a material issue and that the defendant is entitled to prevail as a matter of law. This conclusion is based upon this court's agreement with defendant that plaintiff's cause of action against it based upon the Federal Tort Claims Act is barred by Indiana law. Further, the court is of the view that it has no jurisdiction over the alleged admiralty claim. Under separate headings, the court's reasoning behind its conclusion follows.

*Liability under Indiana Statutes*

Defendant United States moves for summary judgment with respect to the Federal Tort Claims Act allegation asserting, *inter alia,* that no cause of action lies by virtue

---

Corps of Engineers, the State of Indiana, Indiana Department of Natural Resources and the Monroe Guaranty Insurance Company. A settlement agreement was reached with the state defendants and the Monroe Guaranty Insurance Company and, by order of October 31, 1983, plaintiff's claims and causes of action against

these defendants were dismissed without prejudice. Accordingly, the present motion only concerns claims against the federal defendant and therefore, the United States and the Army Corps of Engineers will be collectively referred to as defendant.

of I.C. § 14-2-6-3 and I.C. §§ 4-16-3-1 through 4-16-3-3. Plaintiff, of course, argues that his claim is not barred by either statutory provision.

Though this court, on the basis of the present record, is not convinced that I.C. 14-2-6-3 bars plaintiff's claim, an overview of the parties' arguments with respect to that statute is useful as background for this court's conclusion that plaintiff's claim is, in fact, barred by I.C. 4-16-3-1 through 4-16-3-3. The reason for such an overview flows from the fact that many of the arguments with respect to both statutes overlap and further because plaintiff argues that some of the provisions of I.C. § 14-2-6-3 should be read into 4-16-3-1, *et seq.*

The general restrictions on a landowner's liability to persons using land for recreational activities is embodied in Indiana Code § 14-2-6-3, which provides:

Any person who goes upon or through the premises including, but not as a limitation, lands, waters and private ways of another with or without permission to hunt, fish, swim, trap, camp, hike, sightsee or for any other purposes, without the payment of monetary consideration, or with the payment of monetary consideration directly or indirectly on his behalf by an agency of the state or federal government, is not thereby entitled to any assurance that the premises are safe for such purposes. The owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of other persons using such premises: Provided, That the provisions of this section shall not be construed as affecting the existing case law of Indiana of liability of owners or possessors of premises with respect to business invitees in commercial establishments nor to invited guests nor shall this section be construed as to affect the attractive nuisance doctrine: Provided, further, That nothing in this section contained shall excuse the owner or occupant of premises from liability for injury to persons or property caused by the malicious or illegal acts of the owner or occupant.

I.C. 14-2-6-3. Utilizing the language of the foregoing statute, it is defendant's position that as an owner of land, here the Huntington Reservoir, it "does not assume responsibility for nor incur liability for any injury caused by an act or failure to act by the act of others using the premise" and since a user was "not entitled to any assurance that the premises [were] safe" it is not liable to plaintiff.

There can be no doubt but that the foregoing recreational use statute is an attempt to limit a landowner's liability for persons venturing upon the landowner's premises in pursuit of recreation and in this respect it is not unlike other recreational user statutes in other states which limit the liability of the United States under the Federal Tort Claims Act, *e.g., Jones v. United States*, 693 F.2d 1299 (9th Cir.1982); *Otteson v. United States*, 622 F.2d 516 (10th Cir.1980); *Mandel v. United States*, 545 F.Supp. 907 (W.D.Ark.1982). But the extent that I.C. 14-2-6-3 varies the common law is far from clear.

Fairly read, it could very well be that I.C. 14-2-6-3 does not bar present plaintiff's claim—at least at this juncture. Aside from the provisos contained in the statute (of which more will be said later), the statute on its face may allow plaintiff to pursue his claim.

As for the arguments between the parties, it appears to be defendant's principal position that the second sentence of I.C. 14-2-6-3 which states in part that "the owner of such premises does not assume responsibility for nor incur liability for any injury to person or property caused by an act or failure to act of other persons using such premises ..." bars present plaintiff's claim. Plaintiff, to the contrary, suggests that defendant's reliance upon that passage is misplaced and further that his claim is not barred by the first sentence of the statute which provides that persons who go upon or through landowner's premises for recreational purposes "is not thereby enti-

tled to any assurance that the premises are safe for such purposes."

A recent decision of the Indiana Court of Appeals, which was decided shortly before defendant filed its motion for summary judgment, suggests that the second sentence of I.C. 14–2–6–3 does not, standing alone, bar present plaintiff's claim. That case, *Schwartz v. Zent,* 448 N.E.2d 38 (Ind. App.1983), involved an action by a victim of a hunting accident against a landowner to recover damages sustained in the accident. There, the victim was injured when a hunter on the landowner's premises fired an errant shot which struck the plaintiff who was on neighboring land. While the particular issue before the court in *Schwartz* was whether the statute protected landowners when the injury occurred on neighboring land, the court analyzed Ind.Code 14–2–6–3 in broader terms. That analysis is of aid in the present matter:

> I.C. 14–2–6–3 provides a dual protection from liability for landowners who permit their land to be used by others for recreational purposes. The first sentence of the statute relates to injuries caused by the condition of the land, while the second sentence relates to injuries caused by acts of a recreational user. The language of that second sentence is clear. It provides that the landowner shall not by liable for 'any injury to person or property' caused by such recreational user ...

448 N.E.2d at 39–40. Thus, as *Schwartz* and the statute appear to make clear, the second sentence of I.C. 14–2–6–3 relates only to injuries caused by acts of a recreational user and since plaintiff complains of defendant's act, or failure to act, the second sentence of the statute appears to be wholly inapplicable. So, apart from the provisos, the remaining issue with respect to I.C. 14–2–6–3 is whether or not the first sentence of the statute bars plaintiff's claim.

In essence, the first sentence of I.C. 14–2–6–3 provides that persons who go upon or through the landowner's premises for recreational purposes "is not entitled to any assurance that the premises are safe for such purpose." It is the legislature's use of "assurance" in the statute which leads the parties to differ as to the applicability of the first sentence to the facts of this case.

Relying upon such sources as *Black's Law Dictionary* 158 (4th ed. 1968), *Random House College Dictionary* 83 (Rev. ed. 1979) and *Webster's New Collegiate Dictionary* (1974), it is plaintiff's position that the term "assurance" means "a pledge, guarantee, surety, or a declaration tending to inspire full confidence." (Plaintiff's "Memorandum in Opposition to Defendant's Motion for Summary Judgment," August 4, 1983, Record at 87, p. 30). Interpreting the term "assurance" in that fashion, in plaintiff's view, is in keeping with the general rule that statutes should, if there is a doubt, not be construed as derogating the common law. *E.g., Seymour National Bank v. State,* 179 Ind.App. 295, 384 N.E.2d 1177 (1979); *see also Maroon v. State Dept. of Mental Health,* 411 N.E.2d 404 (Ind.App.1980). Because of the provisos contained within the statute at hand, the court will not quarrel with plaintiff's interpretation that the Indiana legislature's use of the term "assurance" is not in derogation of the common law in this state.[2]

The provisos of Ind.Code 14–2–6–3 sets forth two exceptions which, at least facial-

---

**2.** Even part from the foregoing, it could very well be that the payment of $5.00 for a boat launch permit by Waldron and/or Collins constituted "monetary consideration" so as to take the present case out of the purview of I.C. 14–2–6–3. *See Jones v. United States,* 693 F.2d 1299 (9th Cir.1982) (fee for inner tube not consideration); *Graves v. United States Coast Guard,* 692 F.2d 71 (9th Cir.1982) (injury from dive off a cabana—campground fee was consideration); *Ducey v. United States,* 523 F.Supp. 225 (D.Nev.

1981) (money paid concessionaire not consideration). Here, a genuine issue of fact exists as to whether or not the $5.00 may also have been paid on plaintiff's behalf. Further, given the cases referred to above, it is not clear that defendant would be entitled to judgment as a matter of law. In any event, the court need not resolve this dispute given the court's ultimate conclusion that defendant's motion for summary judgment with respect to I.C. 14–2–6–3 must be denied.

ly, suggest that the statute does not wholly abrogate the common law with respect to the potential liability of a landlord. The first proviso states that nothing in the statute shall "be construed as affecting the existing case law of Indiana of liability of owner's ... premises with respect to business invitees in commercial establishments nor to invited guests ... nor shall this section be construed as to affect the attractive nuisance doctrine." Similarly, the second proviso states that "nothing in this section shall excuse the owner from liability for injury to persons ... caused by the malicious or illegal acts of the owner ...."

If the statute does not affect the existing Indiana case law (common law) vis-a-vis the liability of an owner to "business invitees in commercial establishments nor to invited guests" and if the statute does not excuse the "owner ... of premises from liability or injury to persons" caused "by the malicious or illegal acts of the owner" then defendant cannot, on the basis of this statute, be entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. That is, if I.C. 14–2–6–3 does not wholly abrogate the common law, then some of the common law exceptions to landlord non-liability may entitle plaintiff to recover.

■ Generally, a lessor of premises is not liable for injuries sustained by a party who comes upon its premises and sustains injuries thereon. Of course there are caveats to the general rule of non-liability. The exceptions which may be available under I.C. 14–2–6–3, insofar as the statute reiterates the common law, include, at least, *inter alia*, potential liability where the premises are leased for a public purpose; where the premises contain an existing nuisance; where the landlord retains control over the leased premises; and where the landlord negligently performs a duty he retained. Further, given the second proviso, the government could be potentially liable because of "malicious or illegal acts." Each of these possibilities is considered in turn.

■ First, it could very well be that the present defendant could be liable because it, ostensibly at least, leased the Huntington Reservoir for a public purpose and in doing so is responsible for plaintiff's injury. In this respect, the defendant, under common law, could be potentially liable because "[t]he public purpose exception applies where property is leased for a purpose which involves the admission of the public." *Chrysler Corp. v. M. Present Co., Inc.*, 491 F.2d 320, 323 (7th Cir.1974). It is then the rule that the "lessor is under an affirmative duty to exercise reasonable care to inspect and repair the premises before possession is transferred, to prevent unreasonable risk of harm to the public." *Id.* (quotation omitted); *see also Great Atlantic & Pacific Tea Co., Inc. v. Wilson*, 408 N.E.2d 144 (Ind.App.1980); *Graves v. United States Coast Guard*, 692 F.2d 71 (9th Cir.1982) (California law). Since it is plaintiff's contention (which for present purposes under rule 56 must be accepted as true) that defendant knew that the lessee— State of Indiana—intended to admit the public to the Huntington Reservoir and that the defendant knew that the old gravel sandbar from the Meridian Road embankment constituted an unreasonable risk of harm to the public using the reservoir, it would appear that that defendant would not be entitled to judgment as a matter of law under this common law exception which is apparently recognized under I.C. 14–2–6–3.

■ Second, defendant could be liable under the common law and the provisos of I.C. 14–2–6–3 for leasing a premises with an existing nuisance. Notwithstanding the distinction between a public and private nuisance, *e.g., Stover v. Fechtman*, 140 Ind.App. 62, 222 N.E.2d 281 (Ind.App.1966), a litigant, under the common law, can be held liable for injuries arising from an existing nuisance insofar as it is public, *e.g., Walker v. Ellis*, 126 Ind.App. 353, 129 N.E.2d 65 (1955). And while it is clear that not all of the public is entitled to recover damages for a public nuisance (because of the lack of particular damage to support a private action), *e.g., Town of Rome City v.*

*King,* 450 N.E.2d 72 (Ind.App.1983); *City of Evansville v. Rinehart,* 142 Ind.App. 164, 233 N.E.2d 495 (1968), Count IV of plaintiff's complaint alleges that the defendant created a public nuisance which caused injury and since those allegations must be accepted as true, summary judgment under this common law exception is not warranted.

■ A third exception to the general rule of non-liability for landlords exists where the complainant's injuries occur on land which is still under control of the lessor, *e.g., Rossow v. Jones,* 404 N.E.2d 12 (Ind. App.1980). While this exception generally applies to situations where the lessor leases out premises yet retains control of common passages, such as hallways, present plaintiff's allegations to the effect that the government retained control via the United States Army's Engineers "master plan" and the "Project Safety Plan" set forth sufficient questions of facts which renders summary judgment on the basis of Indiana common law unwarranted.

■ Fourth, under the common law of Indiana, a landlord may be liable where the landlord covenants to repair the premises, *e.g., Robertson Music House v. William H. Armstrong,* 90 Ind.App. 413, 163 N.E. 839 (1928); *see also Hunter v. Cook,* 149 Ind. App. 657, 274 N.E.2d 550 (1971). And since the lease between the defendant and the Indiana Department of Natural Resources suggests that while the Indiana Department of Natural Resources would administer most of the recreational facilities but the defendant would nonetheless inspect the premises and be apprised of hazardous conditions, could very well be that, under the common law of Indiana, present defendant could not prevail on its motion for summary judgment.

■ Yet even supposing that I.C. 14–2–6–3 was intended to displace the common law and with it the exceptions referred to above, it still may be that plaintiff's claim is not barred under that statute because of the second proviso. As indicated, that proviso states that an owner will not be shielded from liability where injury results from malicious or illegal acts of the owner.

Here, plaintiff takes the position that the defendant may be liable for "malicious or illegal" acts and in doing so suggests that "malicious and illegal acts" should be read to mean willful and/or malicious misconduct as is found in most recreational user statutes. *See, e.g., Ill.Rev.Stat.Ch.,* 70 § 36; *Jones v. United States,* 693 F.2d 1299 (9th Cir.1982); *Stephens v. U.S.,* 472 F.Supp. 998 (C.D.Ill.1979). Instead of indulging in the assumption that the Indiana legislature merely miscopied the phrase in its codification, the court will, as defendant suggests, assume that a different standard of care was intended by the enactment. Even so, the court remains unconvinced that the defendant may not be liable for "malicious" acts within the purview of I.C. 14–2–6–3.

"Malice" has been equated with an "evil design," *Fryback v. State,* 272 Ind. 660, 400 N.E.2d 1128, 31 (1980); *also, Drollinger v. State,* 274 Ind. 5, 408 N.E.2d 1228–43 (1980), and, malicious acts have been equated to acts which were wrongful and done without just cause or excuse, *e.g., Baldock v. State,* 177 Ind.App. 355, 379 N.E.2d 539 (1978), and/or acts "done within a condition that shows a heart regardless of social duty and bent or mischief." *Fox v. State,* 179 Ind.App. 267, 384 N.E.2d 1159, 67 n. 16 (Ind.App.1979), *see also, Brown v. State,* 403 N.E.2d 901 (Ind.App.1980). Even utilizing such definitions, which appear to impose a higher standard of care than that required where the given statute speaks in terms of willful or malicious conduct, the court is nonetheless of the view that plaintiff has made allegations sufficient to override defendant's contention that it is not culpable for "malicious acts" in constructing the Huntington Reservoir.

It appears to be plaintiff's position that the defendant created the hazardous condition and notwithstanding the hazardous condition, the defendant entered into an agreement with the contractor which permitted the contractor to allow the Meridian Road embankment to remain, under murky

waters (which at times were deceptively shallow), on the bed of the Huntington Reservoir. It further appears to be plaintiff's position that the defendant had actual knowledge of the hazard yet did nothing, in spite of the probability of, and gravity of, harm and further failed to warn of the harm or attempt to ease such a harm. While such conduct may facially appear to be nothing more than mere negligence, the inferences (which must be construed in plaintiff's favor) is that such conduct *might* constitute a malicious act. Thus when such inferences are made it appears to the court that defendants can not wholly be absolved from potential liability under Ind.Code 14–2–6–3 and its second proviso.

None of the foregoing is intended to suggest that plaintiff could ultimately prevail under Ind.Code 14–2–6–3, nor is any of the foregoing intended to suggest that that statute does not, to a greater or lesser extent, change the common law of Indiana. After all, it would be somewhat incongruous, and perhaps incomprehensible, to assume that Ind.Code 14–2–6–3 is wholly in keeping with the common law for it would make little sense for the Indiana legislature to codify something which is already a part of this state's law. What the foregoing is intended to suggest, however, is that given the mandates of I.C. 14–2–6–3 and the provisos contained therein, and further given the plethora of possibilities involved in this case, vis-a-vis, the applicability of the mandates of that statute, and its provisos, the court is not convinced that that statute entitles defendant to judgment as a matter of law.

■ But there is another statute available to the remaining defendant. And, in the court's view, that statute—4–16–3–1 through 4–16–3–3—necessitates a finding in favor of the defendant United States of America, Army Corps of Engineers.

Indiana Code 4–16–3–1 through Indiana Code 4–16–3–3 (in full, and omitting headnotes) provides:

4–16–3–1

Sec. 1. The word "premises" as used in this act includes lands, waters, private ways and structures thereon.

\* \* \* \* \* \*

4–16–3–2

Sec. 2. Any person who goes upon or through premises leased to the state of Indiana or to any tax-supported institution to study, hunt, swim, fish, trap, camp, hike, sightsee or for any other purpose is not entitled to any assurance that the premises are safe for such purpose. The owner of such premises does not assume responsibility for or incur liability for any injury to person or property caused by an act or failure to act of persons using such premises.

\* \* \* \* \* \*

4–16–3–3

Sec. 3. Nothing in this act creates a duty of care or ground of liability for injury to person or property.

\* \* \* \* \* \*

Ind.Code 4–16–3–1 through 4–16–3–3 (footnote referring to definition of premises in 4–16–3–1 omitted).

The foregoing statute has not been the subject of any reported Indiana decisions. Perhaps that is because the statute appears remarkably clear. Unlike Ind.Code 14–2–6–3, Ind.Code 4–16–3–1 through 4–16–3–3 contains no exceptions, but instead specifically states that any person who (as here) goes upon premises leased to the state is not entitled to "any assurance that the premises are safe for such purpose."

True, the term "assurance" has cropped up once again. Even if, as plaintiff once again urges, "assurance" is defined to mean "a pledge, guarantee, surety, or a declaration tending to inspire full confidence," it does not mean that the defendant is not entitled to the defenses of 4–16–3–1 through 3 because the statute read in its entirety suggests the opposite.

It will be recalled that after the "assurance" language in 14–2–6–3, the statute clearly sets forth two provisos—one relating to the existing case law and the other

relating to malicious or illegal acts. Ind. Code 4–16–3–1 through 3, however, contains no such provisos. To the contrary, the "assurance" language found in Ind. Code 4–16–3–2 is followed by the clear mandate of 4–16–3–3 which provides that "[n]othing in th[e] act creates a duty of care or ground of liability for injury to person or property."

It is, of course, a cardinal rule of statutory construction that a court should presume that the legislature intended to give effect "to every word and clause if possible." *State v. Carter*, 424 N.E.2d 158, 60 (Ind.App.1981). "[A]n interpretation of a statute which does not give effect to all of a statute's provisions must be avoided if any interpretation is possible which would give effect to all of the statute's provisions." *Evansville-Vanderburgh School v. Roberts*, 273 Ind. 449, 405 N.E.2d 895 (1980) citing *Thompson v. Thompson*, 259 Ind. 266, 286 N.E.2d 657 (1972). Thus, in construing words or phrases of a statute the entire statute as well as its purpose must be considered.

When the foregoing rules of statutory construction are applied to the case at hand, it appears quite clear that the two statutes under consideration are quite different even though they both state, in effect, that the recreational user is not entitled to any assurance that the premises are safe for such purposes. After the "assurance" language the statutes diverge greatly: I.C. 14–2–6–3 sets forth provisos which limit non-liability while I.C. 4–16–3–3 sets forth a mandate which restricts liability by creating neither a duty of care nor a ground of liability. Clearly the import of the statutes are different. Aside from the apparent purposes of the statutes (of which more will be said shortly) the language utilized when read in its entirety is quite different. Thus, merely because both statutes may utilize the same phrase relating to "assurance" does not mean that the statutes are identical for, as pointed out before, much more is said in terms of limiting non-liability in Ind.Code 4–16–3–3.

Recognizing that the two statutes differ, plaintiff argues that certain of the exceptions of Ind.Code 14–2–6–3 should be read into Ind.Code 4–16–3–1 through 3. In this respect, plaintiff argues that the exception of Ind.Code 14–2–6–3 which relates to malicious or illegal acts on the part of the owner and the exception for visitors who have paid an entry fee should be read into Ind.Code 4–16–3–1 through 3. This the court will not do.

■ Generally, it is not within the province of the court to add to a statute—that is the legislature's function. *See, e.g., Whitacre v. State*, 274 Ind. 554, 412 N.E.2d 1202 (1980); *Romack v. State*, 446 N.E.2d 1346 (Ind.App.1983). Thus, "[e]xceptions to clearly deliniated statutes will be implied only where essential to prevent 'absurd results' or consequences at variance with the enactment as a whole." *United States v. Rutherford*, 442 U.S. 544, 52, 99 S.Ct. 2470, 75, 61 L.Ed.2d 68 (1979); *accord, Frost v. Review Board of Indiana Employment Security Division*, 432 N.E.2d 459 (Ind.App.1982).

■ In the present matter it does not appear that exception should be read into 4–16–3–1 through 3. The exception of 14–2–6–3 are not needed to prevent absurd results nor are such exceptions necessary to prevent consequences which are at variance with the enactment (4–16–3–1 through 3) as a whole.

Certainly the purposes behind the enactment of the two statutes are different. Indiana Code 14–2–6–3 encourages landowners to open their land for recreational use while Ind. Code 4–16–3–1 through 3 encourages landowners to lease land to the state which in turn could be opened for recreational use. Given that distinction it is not surprising that different protections would be afforded the landowner since it may take more encouragement for an owner to lease his land to another particularly given the fact a landlord has less control than an owner in possession.

Even aside from the foregoing, there is another reason why the exceptions of 14–2–

6–3 should not be read into 4–16–3–1 through 3. It would be redundant. Were the court to read in the exceptions plaintiff desires it would render Ind.Code 4–16–3–1 through 3 superfluous. Just as the Indiana legislature saw fit to draft exceptions into 14–2–6–3 it could have engrafted exception onto 4–16–3–1 through 3. It has not chosen to do so and neither will this court.[3]

■■■ Because the statutes are different, plaintiff sets forth one final argument with respect to his federal tort claims act assertion. Plaintiff argues that if Ind.Code 4–16–3–1 through 3 provides more protection than 14–2–6–3, then the former provision is void as violative of the equal protection clause of both the United States Constitution and the Indiana constitution. Assuming that plaintiff can even raise an equal protection challenge,[4] the court is nevertheless of the view that the statutes in question do not violate the equal protection clauses of either constitution.

Article 1, § 23 of the Indiana constitution provides:

> The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.

The equal protection provision of the United States Constitution is provided in the Fourteenth Amendment which state in relevant part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

While the two provisions are not identical the same standard of review applies. *Vicory v. State*, 272 Ind. 683, 400 N.E.2d 1380, 3 (1980).

■■■ Generally, there is a two-tier standard of review for equal protection claims.[5] Where a statute makes a "suspect classification" such as one based upon alienage, *e.g., In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973), or if the statute affects a "fundamental right" such as the right to travel, *e.g., Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), it will be strictly construed. Where, however the statute's classification does not affect a suspect class, nor impinge on a fundamental right, then it will be upheld if it rationally furthers a legitimate state objective, *e.g., Williamson v. Lee Op-*

---

**3.** The court, of course, recognizes that I.C. 4–16–3–1 through 3 was enacted in 1963 while 14–2–6–3 was enacted in 1969. But this does not change the court's conclusion that the Indiana legislature, given all this time, could have, if it wanted to, redraft the statute to include any exceptions it desired. It must be presumed that in enacting 14–2–6–3 the legislature was aware of the former statute since "[t]here is a strong presumption that the legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject." *Indiana Alcoholic Beverage Commission v. Osco Drugs, Inc.*, 431 N.E.2d 823, 33 (Ind.App.1982). Further, since the two statutes are not in irreconcilable conflict, nor are they repugnant to one another, it cannot be said that Ind.Code 14–2–6–3 repealed, by implication or otherwise, the former statute. *See, Osborne v. State*, 439 N.E.2d 677 (Ind.App.1982); *Wencke v. City of Indianapolis*, 429 N.E.2d 295 (Ind.App.1981).

**4.** It is not altogether clear that plaintiff has standing to challenge the constitutionality of I.C. 4–16–3–1 through 3. "Ordinarily, a question as to the constitutionality of a statute on the

ground that it denies rights and privileges by discriminating between classes of people may not be raised by one not belonging to the class alleged to be discriminated against." *Indiana Department of State Revenue v. Indiana Gamma Gamma, Inc.*, 181 Ind.App. 664, 394 N.E.2d 187, 97 (1979). Here, it would appear that standing to challenge I.C. 4–3–3–1 would inure to landowners who open property for recreational use but do not lease it to the state. Since, however, "[i]n Indiana, the standing requirement is stated in terms of the requirement of a party to show injury," *id.*, the court will analyze plaintiff's challenge.

**5.** There is, of course, an increasing tendency to recognize a third, intermediate, standard of review in cases involving either "quasi-suspect" classifications such as sex, *e.g., Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979), or important rights such as welfare, *e.g., Medora v. Colautti*, 602 F.2d 1149 (3rd Cir. 1979).

*tical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). That is, "in the absence of fundamental rights or a suspect classification, equal protection requires only that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose." *French v. Heyne,* 547 F.2d 994, 997 (7th Cir.1976) *citing, Wojcik v. Levitt,* 513 F.2d 725 (7th Cir.1975).

In the present matter neither party has even intimated that either fundamental constitutional rights are involved in this case or that plaintiff is a member of a suspect class. Accordingly, the test to be utilized in analyzing the equal protection claim is the rational relationship test. In fact, other Indiana statutes which grant immunity from suit have withstood equal protection challenges because they met the rational relationship test. *E.g., Cartee v. Weber,* 397 N.E.2d 622 (Ind.App.1979); *Holt v. City of Bloomington,* 181 Ind.App. 179, 391 N.E.2d 829 (1979). And, recreational use statutes, in other jurisdictions, have been found to further a legitimate state interest and thus survive equal protection challenges. *E.g., Simpson v. United States,* 652 F.2d 831 (9th Cir., 1981) (California statute); *Moss v. Department of Natural Resources,* 62 Ohio St.2d 138, 404 N.E.2d 742 (1980) (Ohio statute).

This court agrees with defendant that the Indiana legislature in enacting Ind. Code 4–16–3–1 through 3 furthered a legitimate goal and that the statute has a rational relationship to the purpose of encouraging persons to lease land to the state so that the state may open the area to recreational users. It is not idle speculation to assume that more may be required to encourage a landowner to lease land to another than would be required to encourage a landowner to open the land, on his or her initiative, to recreational users since a lessor, by implication, has less control over the property than would a landowner who permits recreation on his or her property. Further, as defendant astutely points out, land leased to the state would be of more benefit to the state than land not so leased,

and it follows from such a proposition that additional encouragement in the form of more limited liability would encourage such a turnover. Thus, Ind.Code 4–16–3–1 through 3 does not violate the equal protection clauses of either the Indiana constitution or the United States Constitution since a rational relationship to a legitimate state purpose exists in distinguishing between landowners who lease their property to the state for recreational use and those who open up their own land for recreational purposes.

By way of summary, with respect to plaintiff's Federal Tort Acts claim, the court holds as follows. While plaintiff, arguably, sets forth sufficient facts to override defendant's motion for summary judgment with respect to Ind.Code 14–2–6–3, Ind.Code 4–16–3–1 through 4–16–3–3 bars plaintiff's state law claims against this defendant. Further the court holds that notwithstanding the distinction between those two statutes, and assuming that present plaintiff has standing to raise the issue, Ind.Code 4–16–3–1 through 4–16–3–3 is not void as violative of the equal protection clause of either the United States Constitution or the Indiana constitution. Accordingly, summary judgment on the Federal Tort Claims Act allegation must be GRANTED in favor of the defendant United States of America, Department of the Army, Corps of Engineers. There remains the admiralty claim.

*Admiralty Claim*

Count V of plaintiff's amended complaint asserts that the court has jurisdiction over plaintiff's claim by virtue of admiralty jurisdiction. In this count, without more, plaintiff asserts, in conclusory fashion, that the Huntington Lake Reservoir is a "navigable water" for purposes of admiralty jurisdiction. As will be seen, this court is of the view that such conclusory allegations, given the evidence to the contrary, does not provide jurisdiction in this court.

Generally, a tort claim is maritime in nature and within the jurisdiction of the federal courts when the alleged wrong (1)

occurs on navigable waters and, (2) the activity bears a significant relationship to maritime activity. *McCormick v. United States*, 680 F.2d 345 (5th Cir.1982); *e.g., Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Executive Jet Aviation v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In this case, it is altogether clear, to the court, that plaintiff's activity did not bear a substantial relationship to traditional maritime activity nor did it occur upon navigable waters. Both of these elements, which are necessary for admiralty jurisdiction, will be considered in turn.

With respect to traditional maritime activity, of course, "a shipwreck on the high seas is quintessentially the kind of incident for which the distinctive doctrines and remedies of admiralty were designed ..." *In Re: Oil Spill by the Amoco Cadiz off the Coast of France*, 699 F.2d 909, 13 (7th Cir.1983). This case, however, presents no such activity, yet, as the parties to the present dispute recognize, there have been several decisions with facts analogous to the case at bar.

For example, in *Onley v. South Carolina Electric & Gas Co.*, 488 F.2d 758 (4th Cir.1973) and *Chapman v. City of Grosse Pointe Farms*, 385 F.2d 962 (6th Cir.1967), among other cases, it was suggested that diving bears no significant relationship to maritime activity. Similarly, swimming, *e.g., McGuire v. City of New York*, 192 F.Supp. 866 (S.N.Y.1961); *Rubin v. Power Authority of New York*, 356 F.Supp. 1169 (W.N.Y.1973); and water skiing, *e.g., Crosson v. Vance*, 484 F.2d 840 (4th Cir.1973); *Jorsch v. LeBeau*, 449 F.Supp. 485 (N.D.Ill. 1978) have been found not to be "traditional maritime" activities. Such conclusions in the court's view is not surprising given the purpose, as set forth in *In re Cadiz, supra,* at 913, underlying admiralty jurisdiction.

In an effort to distinguish such cases, plaintiff levels a two prong argument. First, plaintiff asserts that such cases are distinguishable on their facts and second, given the United States Supreme Court decision in *Foremost Insurance, supra,* the continued validity of such cases is in dispute. With neither proposition does the court agree.

Every case, by its very nature, is distinguishable on its facts for it would be rare indeed for any two cases, brought to litigation, to be identical. While the plaintiff in *Chapman, supra,* may have dove off a pier; and while the plaintiff (swimmer) in *McGuire, supra,* may have dove off a pier; and while the plaintiff *Crosson, supra,* may have been waterskiing, it does not change this court's ultimate conclusion that such activities do not constitute traditional maritime activity so as to warrant the invocation of admiralty jurisdiction. Here, in pursuit of recreational activity, plaintiff dove out of a seventeen foot boat. In the court's view, such activity is not traditionally maritime.

Nor is the court convinced that the United States Supreme Court's decision in *Foremost Insurance, supra,* vitiates decisions which suggest that swimmers, waterskiers, and divers are not engaged in traditional maritime activity. In *Foremost Insurance,* the United States Supreme Court was presented with a precise issue: "whether the collision of two pleasure boats on navigable waters falls within the admiralty jurisdiction of the federal courts." 102 S.Ct. at 2656. True, it appears at least one of the pleasure boats was pulling a waterskier (102 S.Ct. 2656) but on at least two occasions, (aside from the framing of issues), the court limited its holding to collisions of pleasure boats occurring on navigable waters. First, the Court indicated that the "(wrong) here involves the negligent operation of a vessel on navigable waters" and concluded that such an activity "has a sufficient nexus to traditional maritime activity to sustain admiralty jurisdiction in the District Court." 102 S.Ct. at 2658. Secondly, in note 5 of its opinion, the Supreme Court stated that the activity of pleasure boats could "bear a traditional maritime activity" where, "navigation of boats in [that] case," bears a substantial relationship to "traditional maritime activity." *Foremost Insurance,* 102 S.Ct. at 2659 n. 5. Thus, it cannot be said

that the United States Supreme Court decision in *Foremost, supra,* by implication, or otherwise, overrules decisions which suggest that swimmers, divers, and/or water-skiers, are not engaged in traditional maritime activity. Stated simply, the issue before the Supreme Court was entirely different, and this court, given the difference, is not about to hold that present plaintiff's activity constituted traditional maritime activity.

■ Yet even supposing that plaintiff was engaged in traditional maritime activity, it appears clear to the court that the Huntington Reservoir is not navigable within the meaning of admiralty jurisdiction.

As a general rule, waters which are presently capable of commercial shipping are navigable for purposes of admiralty jurisdiction. *Livingston v. United States,* 627 F.2d 165 (8th Cir.1980). Further, even if the waters are not currently being used for commercial navigation, the admiralty jurisdiction of a federal court may be invoked where the same are "susceptible of such use in their present state." *Chapman v. United States,* 575 F.2d 147, 51 (7th Cir. 1978). Under either definition, it appears clear to the court that the Huntington Reservoir is not a navigable water so as to warrant this court's admiralty jurisdiction.

■ In reply to plaintiff's motion for summary judgment, the defendant filed an affidavit. Despite a supplemental reply on plaintiff's behalf, that affidavit remains undisputed insofar as it suggests that the Huntington Reservoir is not navigable. So far as is relevant, the affiant, Glenn E. Bayes, Chief of the Natural Resources Management Branch of the Operations Division of the Louisville District Corps of Engineers, avers as follows:

2. That Huntington Reservoir was created by construction of a concrete flood control dam, a project begun in 1965;

3. That no locks or channel were constructed with the dam;

4. That the dam renders the waterway not susceptible of being used as an artery of commerce;

5. That there are no commercial marinas located on Huntington Lake;

6. The lake is contained wholly within the State of Indiana.

(Defendants' "Memorandum in Reply to Plaintiff's Response," Record at 91, Exhibit B.) Clearly, given such unopposed allegations, it would appear that the Huntington Reservoir is not a navigable waterway. That conclusion is bolstered further by recent decisions which have construed admiralty jurisdiction in terms of navigable waters.

Particularly worthy of note on this score is the post-*Foremost* decision of the United States Court of Appeals for the Sixth Circuit in *Finneseth v. Carter,* 712 F.2d 1041 (6th Cir.1983). There, after extensive review of the existent case law, the court concluded that the waterway in question (Dale Hollow Lake) was within the admiralty jurisdiction of the federal district court because seven to eleven commercial marinas surrounded it and, more importantly, it was an *"interstate body* of water susceptible or capable of being used as an *interstate* highway of commerce, even though it is not so used...." *Finneseth, supra,* at 1047 (emphasis added). It is the analysis utilized by the United States Court of Appeals for the Sixth Circuit which is particularly enlightening in this case.

In arriving at the conclusion that Dale Hollow Lake was in fact navigable, the court wrote:

The principles to be distilled from the above-mentioned Supreme Court cases are that an *artificial water body, such as a man-made reservoir, is navigable in fact for purposes of conferring admiralty jurisdiction if it is used or capable or susceptible of being used as an interstate highway* for commerce over which trade or travel is or may be conducted in the customary modes of travel on water.

In this case Dale Hollow Lake clearly meets the requirement that the lake be

**1268**

an *interstate* highway for commerce because it straddles Kentucky and Tennessee. Because the interstate nexus is satisfied in this manner, it is not probative that maritime traffic on the lake is prevented from traveling downstream by the lockless dam. Two cases cited by appellee Carter, *Chapman v. United States,* 575 F.2d 147 (7th Cir.) (en banc), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978), and *Adams v. Montana Power Co.,* 528 F.2d 437 (9th Cir.1975), are distinguishable from the case on appeal in that the reservoirs created by lockless dams were wholly within the confines of one state. Thus, the threshold requirement that the water body be available as an interstate highway of commerce was not satisfied.

*Finneseth, supra,* 712 F.2d at 1044 (emphasis added). Since boaters in *Finneseth* could traverse the lake between Kentucky and Tennessee, the interstate nexus requirement was met.

It appears that the body of water in question—the Huntington Reservoir—is not navigable for purposes of conferring admiralty because it is not being used, nor "capable or susceptible of being used as an interstate highway for commerce over which trade or travel is or may be conducted...." *Finneseth, supra,* at 1044. The reservoir itself, as the unopposed affidavit makes clear, lies wholly within the state of Indiana. Unlike waterways such as Dale Hollow Lake, the Huntington Reservoir does not straddle, or have boundaries, in two or more, states. Thus the interstate nexus requirement for navigability is absent.

 In summary, the court is of the view that it lacks jurisdiction over plaintiff's alleged admiralty claim under 28 U.S.C. § 1333. At the time in question, plaintiff was not engaged in traditional maritime activity nor did the accident occur on navigable waters. Accordingly, defendants' motion for summary judgment on this count must be GRANTED.

*Conclusion*

On the basis of the foregoing, it is ORDERED, ADJUDGED, and DECREED that the United States of America, Department of the Army, Corps of Engineers' May 24, 1983, "Motion for Summary Judgment" be GRANTED. Judgment is entered on behalf of that defendant.