The AMERICAN NATIONAL BANK AND TRUST COMPANY OF WAUKEGAN, as Special Administrator of the estate of Daniel Janda, deceased, for the benefit of the Estate of Daniel Janda, Robin Janda, surviving spouse, and Heather Janda, Michelle Janda and Jonathan Janda, minor children and next of kin of Daniel Janda, deceased; and Robin Janda, individually, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 85 C 7614.

United States District Court, N.D. Illinois, E.D.

April 17, 1986.

John J. Piccione/Patrick C. Keeley/David J. Boersma, Piccione, Keeley & Associates, Ltd., Wheaton, Ill., Philip J. Ryan, Waukegan, Ill., for plaintiffs.

Mary Rigdon, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff American National Bank and Trust Company of Waukegan ("American"), acting as special administrator for decedent Daniel Janda, filed this wrongful death and survivor's suit against the United States for alleged negligent, wanton and willful conduct in failing to warn of an underwater hazard in navigable waters. The government has filed a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Because this Court finds that there is no federal subject matter jurisdiction over this action, the United States' 12(b)(1) motion to dismiss is granted.[1]

American alleges that on September 3, 1983, decedent Janda was on a privately-owned pleasure boat on Petite Lake in Lake County, Illinois. When the boat was stopped somewhere in the "southeast middle" section of the lake, Janda dove into the water. Tragically, Janda was unaware that the depth of the water in this part of the lake was only two and a half to three feet and when he dove he struck his head on a submerged island and suffered serious and permanent injuries which rendered him a quadraplegic. On April 1, 1985, Janda died as a result of injuries incurred in this accident.

According to the complaint, the land mass on which Janda struck his head was at one time an island. However, American alleges that sometime before September 3, 1985, the United States Army Corps of Engineers issued permits for and/or authorized construction of the McHenry Dam on the Fox River, which runs into the "Chain O'Lakes" of which Petite Lake is a part. Construction of the dam caused the water level in Petite Lake to rise approximately six feet and cover the island on which Janda landed. American alleges that the government was aware that it had created this underwater hazard, yet neither the Corps of Engineers nor the United States Coast Guard warned lake users about the obstruction or tried to remove it, thus violating a common law duty of care or, in the alternative, violating the provisions of 14 U.S.C. § 86 (1982).[2]

American asserts federal subject matter jurisdiction on the basis of admiralty jurisdiction, 28 U.S.C. § 1333(1) (1982), and bases its action on the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1982), which establishes a limited waiver of sovereign immunity for admiralty suits against the United States government. Federal courts may maintain admiralty jurisdiction in tort actions only where the alleged wrong (1) oc-

---

1. For this reason, we need not decide the government's 12(b)(6) motion.

2. That section provides:
   The Secretary may mark for the protection of navigation any sunken vessel or other obstruction existing on the navigable waters or waters above the continental shelf of the United States in such manner and for so long as, in his judgment, the needs of maritime navigation require. The owner of such an obstruction shall be liable to the United States for the cost of such marking until such time as the obstruction is removed or its abandonment legally established or until such earlier time as the Secretary may determine. All moneys received by the United States from the owners of obstructions, in accordance with this section, shall be covered into the Treasury of the United States as miscellaneous receipts. This section shall not be construed so as to relieve the owner of any such obstruction from the duty and responsibility suitably to mark the same and remove it as required by law.

curs on navigable waters and (2) has a significant connection with "traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972); *In re Oil Spill by Amoco Cadiz Off the Coast of France*, 699 F.2d 909, 912 (7th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983). In the present case, the government argues that admiralty jurisdiction cannot be maintained because Petite Lake is not a "navigable water" within the meaning of the *Executive Jet* test and because the tragic events leading to Janda's death had no significant connection to traditional maritime activities. Because this Court finds that the factual circumstances alleged in this case bear no significant nexus to any traditional maritime activity, the question of whether Petite Lake is a "navigable water" need not be addressed.[3]

Ever since the Supreme Court's *Executive Jet* decision, federal courts have struggled to find a meaningful test for determining what constitutes a traditional maritime activity. This important concept is rooted in the fundamental purposes supporting the necessity for uniform admiralty laws and procedures. *See Executive Jet*, 409 U.S. at 269–70, 93 S.Ct. at 505; *Amoco Cadiz*, 699 F.2d at 913. Questions of admiralty jurisdiction in tort cases arising from recreational activities on navigable waters have been debated repeatedly since the Supreme Court abandoned the mechanical "maritime locality" test and established the nexus requirement. *Executive Jet*, 409 U.S. at 268, 93 S.Ct. at 504. Many of these cases have dealt with persons injured in water skiing accidents, although courts upholding admiralty jurisdiction in those cases have focused on the allegations of navigational error as the relevant nexus to maritime activity. *See, e.g., Hogan v. Overman*, 767 F.2d 1093, 1094 (4th Cir.1985);

*Medina v. Perez*, 733 F.2d 170, 171 (1st Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985).

In *Executive Jet*, the Supreme Court expressed disapproval of earlier federal cases allowing parties to assert admiralty jurisdiction in cases of injured water-skiers and swimmers, because these cases applied the strict rule requiring maritime locality without sufficiently addressing the connection of the torts to maritime activity. 409 U.S. at 255–56 & n. 5, 93 S.Ct. 498 & n. 5. However, this criticism may have turned in part on the distinction between commercial and private maritime activities since rejected by the court in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 674–75, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982). Nevertheless, the Court continues to recognize the difficulties in extending jurisdiction to cases where swimmers are injured by other swimmers or by submerged objects in shallow waters near shore, and no navigational error is involved in the injury. *Id.* at 674 n. 4; 102 S.Ct. at 2658 n. 4.

Still other courts have focused only on the activities undertaken by the plaintiff when injured. In *Reed v. United States*, 604 F.Supp. 1253, 1266 (N.D.Ind.1984), a case with facts very close to the present one, a federal district court held that a person who is injured when diving off of a boat into a shallow area in navigable waters is not engaged in or connected with a traditional maritime activity for the purposes of establishing admiralty jurisdiction.

The preferred course, in this Court's view, is to evaluate the entire scope of events involving both the defendant's behavior and the manner in which the plaintiff is injured in evaluating whether there is a connection with traditional maritime activity significant enough to establish admiralty jurisdiction. *See National Union*

---

3. The parties have strongly disputed the issue of whether Petite Lake is a "navigable water" for the purposes of admiralty jurisdiction. The government submitted two affidavits with its reply brief in support of its motion to dismiss regarding the status of Petite Lake as a "navigable water." American filed a motion to strike these affidavits on the basis that they raise factual issues inappropriate for resolution on a motion to dismiss. Because we hold today that the alleged tort in this case does not bear a significant nexus to traditional maritime activity, there is no need to resolve either the navigable water dispute or the motion to strike.

*Fire Insurance Company of Pittsburgh, Pennsylvania v. United States*, 436 F.Supp. 1078, 1083 (M.D.Tenn.1977).

Applying these broad principles to the present case, the Court does not agree with American that the accident involved bears a significant relationship to traditional maritime activity. Although the tort involved need not be linked to *commercial* maritime activities, *Foremost*, 457 U.S. at 674–75, 102 S.Ct. at 2658, it still must implicate the necessity for uniform governance of navigable waters. While this implication arises in cases where there has been an injury caused by navigational error, *Hogan v. Overman*, 767 F.2d 1093, 1094 (4th Cir.1985), it does not follow that all injuries incurred in any recreational activity in navigable waters have a significant maritime connection. Thus, while diving may be a traditional aquatic activity, it is not a traditional maritime activity.

American argues correctly in this Court's view, that in evaluating the connection to maritime activities courts must look not only to the way the injury occurred but also to the cause of the injury.[4] Thus, we must take into account the fact that the behavior which allegedly caused Janda's injury and death was the construction of a dam which affected the physical nature of the navigable waterway. However, in other cases where the defendant has allegedly caused the level to rise in a navigable water, resulting in some sort of injury, courts have been reluctant to exercise admirality jurisdiction absent an injury that is within the scope of traditional maritime activity. *Onley v. South Carolina Electric & Gas Co.*, 488 F.2d 758, 760 (4th Cir.1973); *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. United States*, 436 F.Supp. 1078, 1083 (M.D.Tenn. 1977). In *Onley*, the plaintiff was injured when he dove from a dock into a lake and struck a boat ramp extension which had become submerged as a result of the defendant utility company's alteration of the lake's water level by one of its electrical generation plants. In affirming the district court's jurisdictional dismissal, the Court of Appeals for the Fourth Circuit wrote:

We hold that appellee's control of the water level of a lake for purposes of generating electricity, which results in a diving accident, does not bear a sufficiently significant relationship to traditional maritime activity to create federal admirality jurisdiction. While the control of the water level of a navigable waterway may, *in some cases*, have an intimate relationship with maritime activities, there is no such maritime connection where a diving accident is the only consequence.

*Onley*, 488 F.2d at 760 (emphasis added). *See also National Union*, 436 F.Supp. at 1083 (no admiralty jurisdiction in suit where defendant's control of water level of navigable waterway causes damage to plaintiff's goods stored in warehouse on shore). Hence, even taking into account the entire sequence of events leading up to Janda's tragic dive, this Court finds no significant connection to traditional maritime activity.

American has urged the Court to employ the four-part formula adopted by other circuits for determining the existence of a sufficient nexus to traditional maritime activity. *See, e.g., Oman v. Johns-Manville Corp.*, 764 F.2d 224, 230 (4th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985). This test directs courts to consider (1) the functions and roles of the parties; (2) the types of vehicles and instrumentalities involved; (3) the causation and type of injury; and (4) traditional concepts of the role of admiralty law. *Id.* While the Seventh Circuit has not had occasion to adopt this formulation, we cannot see how the test's application in this case would affect the outcome. Although the function and role of the United States, through the Coast Guard and the

<hr/>

**4.** This important aspect of the jurisdictional issue was not discussed by the district court in *Reed v. United States*, 604 F.Supp. 1253 (N.D. Ind.1984), a case with facts almost identical to this one. Although this Court agrees with the result in *Reed*, we feel that a closer analysis of all of the incidents alleged is warranted in determining jurisdiction.

Army Corps of Engineers, may involve control over the waters in question, little else in this case supports the invocation of admiralty jurisdiction. The function and role of a recreational swimmer or diver does not implicate the concerns with maritime commerce or navigational control underlying the concept of admiralty jurisdiction. The vehicle involved was a small motor boat used for purely recreational purposes and was not even involved in any manner with the injury suffered by Janda. The cause and type of injury in this case, however tragic, likewise do not implicate concerns which reflect the necessity for federal jurisdiction. Finally, traditional concepts of the role of admiralty law, the most important aspect to consider, *id.* at 231, do not include the idea of broad federal jurisdiction for wrongful death claims which are unrelated to navigational or maritime commerce activities.

In light of the discussion above, the government's motion to dismiss this suit for lack of federal subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is granted. It is so ordered.