**In re OIL SPILL BY the AMOCO CADIZ OFF the COAST OF FRANCE ON MARCH 16, 1978.**

**Appeal of ASTILLEROS ESPANOLES, S.A.**

**Nos. 82–1751, 82–1943.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1983.

Decided Feb. 3, 1983.

Rehearing and Rehearing En Banc Denied March 23, 1983.

See also, D.C., 491 F.Supp. 170.

James E. Betke, McDermott, Will & Emery, Chicago, Ill., for appellant.

Frank Cicero, Jr., Kirkland & Ellis, Chicago, Ill., T. Barry Kingham, Curtis, Mallet, Prevost, Colt & Mosle, New York City, for appellee.

Before POSNER and COFFEY, Circuit Judges, and NEAHER,* Senior District Judge.

POSNER, Circuit Judge.

The supertanker *Amoco Cadiz,* which had been built in Spain by a Spanish company, Astilleros Espanoles, S.A., broke up off the coast of France in 1978, causing an extensive oil spill. French citizens who allege damage from the oil spill are plaintiffs in a suit in federal district court in Chicago under the admiralty jurisdiction, 28 U.S.C. § 1333. The principal defendants are Astilleros and various affiliates of Standard Oil Company (Indiana), including Amoco Transport Company, the owner of the *Amoco Cadiz.* The plaintiffs argue that Amoco (as we shall refer to Standard and its affiliates) is liable for the damage because of negligent operation of the ship and Astilleros because of negligent or defective design and breach of implied warranty. Amoco filed a cross-claim against Astilleros under Rule 13(g) of the Federal Rules of Civil Procedure and a third-party complaint against Astilleros under Rule 14(c)—pleadings that we shall refer to jointly as the "cross-claim"—alleging that Astilleros was primarily responsible for the accident and should therefore be ordered to reimburse

Amoco in whole ("indemnity") or substantial part ("contribution") for any damages that Amoco is ordered to pay the plaintiffs.

Astilleros moved to dismiss the French plaintiffs' complaint and Amoco's cross-claim, urging that the district court lacked subject-matter jurisdiction of both claims and personal jurisdiction over Astilleros, and that Chicago was an inconvenient forum for Astilleros to litigate in. The district court denied the motions, 491 F.Supp. 170 (N.D.Ill.1979), Astilleros defaulted, the court entered judgment against Astilleros on both claims, and Astilleros appeals, 28 U.S.C. § 1292(a)(3).

█ Although the only ground Astilleros raises on appeal is personal jurisdiction, we shall consider on our own initiative whether a products liability claim against a shipbuilder, arising out of a shipwreck on the high seas, is within the federal admiralty jurisdiction. At a time when the only test of admiralty jurisdiction was whether the wrong complained of had occurred on navigable waters, this question could be, and was, confidently answered "yes." See, e.g., *Watz v. Zapata Off-Shore Co.,* 431 F.2d 100, 110–11 (5th Cir.1970). But the Supreme Court overthrew exclusive reliance on locality in *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 261, 93 S.Ct. 493, 501, 34 L.Ed.2d 454 (1972), and held that "the relationship of the wrong to traditional maritime activity" must also be considered. Although there is considerable post-*Executive Jet* authority that a products liability claim against a shipbuilder is within the admiralty jurisdiction, see, e.g., *White v. Johns-Manville Corp.,* 662 F.2d 234, 239 (4th Cir.1981), this circuit has not addressed the question.

The admiralty jurisdiction gives the federal courts jurisdiction, to a significant extent exclusive, see Currie, Federal Jurisdiction 122 (1981), over a class of disputes that need not involve a federal question or diversity of citizenship; and we have to ask what is distinctive about those disputes that might explain such a grant of jurisdiction.

* Of the Eastern District of New York.

The answer lies in the mobility and range of ships, which enable them to do physical and financial damage at a great distance from the owners' and victims' domiciles. It would not do to limit jurisdiction to courts in those domiciles (especially since there will often be several victims, not all of whom have the same domicile), or in the place of the wrong, which will often be in international waters and therefore outside any nation's territorial jurisdiction. The solution, hit upon long ago, was to allow suit against the owner of a ship that caused damage to be brought in any port at which the ship called, through the fiction that the ship itself was the offender and therefore a proper party defendant. See Holmes, The Common Law 28–30 (1881). Being thus exposed to suit almost everywhere, maritime venturers demanded that their legal rights and duties be determined by a reasonably uniform international code rather than a myriad of local laws, and maritime nations such as the United States responded by creating a distinctive admiralty jurisdiction, enforced in national rather than local courts and drawing its remedies and doctrines in part at least from an international body of principles rather than from local law alone. See *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 160, 40 S.Ct. 438, 440, 64 L.Ed. 834 (1920).

■ Since a shipwreck on the high seas is quintessentially the kind of incident for which the distinctive doctrines and remedies of admiralty law were designed, the French plaintiffs' action against Amoco, at least, is within the admiralty jurisdiction; any doubt on that score created by the fact that the damage occurred on land, see *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 340, 93 S.Ct. 1590, 1599, 36 L.Ed.2d 280 (1973), is removed by the Admiralty Jurisdiction Extension Act, 46 U.S.C. § 740, see *American Waterways Operators, Inc. v. Askew*, 335 F.Supp. 1241, 1247 and n. 23 (M.D.Fla.1971), rev'd on other grounds, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973). If the French plaintiffs' action against Astilleros is also within that jurisdiction, then so is Amoco's Rule 13(g) cross-claim, since such a cross-claim does not need

an independent jurisdictional basis. *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 452 (7th Cir.1982). While there is a question whether admiralty impleader (Rule 14(c)) does, see 6 Wright & Miller, Federal Practice and Procedure § 1465 at pp. 348–50 (1971), Amoco gained nothing by basing its cross-claim on Rule 14(c) as well as Rule 13(g). Rule 14(c) does enable the third-party plaintiff (Amoco) to force the third-party defendant (Astilleros) to defend directly against the main claim, but that is of no consequence when, as in this case, the third-party defendant is already a defendant in the main action.

■ But to tie jurisdiction over Amoco's Rule 13(g) cross-claim to jurisdiction over the main claim against Astilleros would make it impossible for us to decide the issue of subject-matter jurisdiction over the cross-claim until we resolved the issue of personal jurisdiction over Astilleros on the main claim. A Rule 13(g) cross-claim will lie only against an existing defendant. If Astilleros were dismissed from the main suit, then by analogy to the disposition of pendent claims when the main claim is dismissed before trial, see *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), jurisdiction over Amoco's cross-claim, if based solely on state law, would almost certainly be declined. *Cenco Inc. v. Seidman & Seidman*, *supra*, 686 F.2d at 458; *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 811 (2d Cir.1979).

■ All this assumes that there is federal subject-matter jurisdiction over the plaintiffs' claim against Astilleros. Since jurisdiction over their claim against Amoco is incontestable, there probably is pendent jurisdiction over their claim against Astilleros arising from the same transaction. *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 811 (2d Cir.1971); *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1040–41 (5th Cir.1982). Although many recent decisions, including our circuit's decision in *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1008–09 (7th Cir.1982), reject "pendent par-

ties" jurisdiction as a basis for allowing a diversity plaintiff to bring in an additional defendant against whom the plaintiff has a state law claim that does not satisfy the minimum amount in controversy requirement of the diversity statute, 28 U.S.C. § 1332, the admiralty setting is distinguishable. The tradition of liberal joinder, reflected in Rule 14(c), illustrates the strong admiralty policy in favor of providing efficient procedures for resolving maritime disputes.

■ But we need not pursue these byways. The allegations in the complaint and cross-claim that Astilleros is a culpable party in a maritime tort bring both claims within the admiralty jurisdiction directly; they need not be tied to the French plaintiffs' claim against Amoco. The builder as well as the owner of a ship can cause great injury at a great distance. The victims of that injury—which both Amoco and the French plaintiffs claim in different ways to be—should have the same generous choice of forums they would have in suing the ship's owner, and the builder in turn should have the security of having his legal duties defined by a more or less uniform system of international rules. In addition, since issues of safety in the operation of a ship and in its design or construction overlap, the experience that the federal courts have obtained as the primary tribunals for deciding issues of the former type gives them a comparative advantage in deciding the latter as well.

Cases such as *Thames Towboat Co. v. The Francis McDonald,* 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920), which hold that the breach of a shipbuilding contract is not within the admiralty jurisdiction, are inapposite. They are cases of damage at a fixed locale, that of the buyer or the seller; and most of them—the ship buyer's suit on an executory contract, or the shipbuilder's suit for the price, for example—do not involve safety or other distinctively maritime issues at all.

So we have subject-matter jurisdiction, and can turn to the issues of personal jurisdiction that Astilleros raises. Rule 4(e) of the Federal Rules of Civil Procedure authorizes use of the local long-arm statute to obtain jurisdiction over a nonresident; and Ill.Rev.Stat.1981, ch. 110, § 17(1)(a), subjects anyone who has engaged in the "transaction of business" in Illinois to the jurisdiction of the Illinois courts "as to any cause of action arising from" that transacting. See also § 17(3). We consider first whether the cause of action in the cross-claim arises from Astilleros' transacting business in Illinois and if so whether such an application of the Illinois statute is consistent with due process.

The contract to build the *Amoco Cadiz* was signed in Chicago in 1970 after extensive negotiations, in Chicago and Spain, between Astilleros and Amoco. The nominal purchaser under the contract was a yet-to-be-formed Liberian corporation, Amoco Tankers Company. It is not one of the cross-claimants; after taking delivery of the ship, it transferred title to another Liberian corporation, Amoco Transport Company. Although Astilleros makes much of Amoco Tankers' place of incorporation, there do not appear to be any real Liberians in the picture—Liberian registry having been obtained no doubt for the none too creditable purpose of avoiding liability, rather than to conduct business in or from Liberia. The real purchaser of the *Amoco Cadiz* was Standard Oil Company (Indiana), whose headquarters is in Chicago; and while for many purposes the decision to do business through a subsidiary has legal consequences, we do not believe that Standard Oil's decision to create a Liberian subsidiary to hold title to the *Amoco Cadiz* should affect our interpretation of the Illinois long-arm statute. We doubt that Illinois would want to withdraw the protection of its laws from a major Illinois enterprise merely because the enterprise had created a Liberian shell in an effort (if that is what it was) to keep some of its assets out of the reach of potential creditors unlikely to be Illinois residents. Moreover, the effort apparently failed; Standard Oil is a defendant in this litigation. If the plaintiffs can pierce Standard Oil's corporate veil to get

at it directly, we cannot see why Standard Oil should not be able to pierce its own veil and get at Astilleros.

To negotiate and then sign a contract in the purchaser's domicile is to transact business there in a substantial sense, thus satisfying the first requirement of section 17(1)(a). Amoco's cause of action against Astilleros clearly would "arise from" that transacting if the cause of action were for a breach of the contract, but it is not, not quite anyway. The contract provides that disputes arising under it shall be arbitrated in London. The arbitration clause has not been invoked; maybe it cannot be because the cross-claimants are different corporations from the contract signator, Amoco Tankers; but whether or not the clause might have enabled Astilleros, if it had not defaulted, to get the cross-claim stayed pending arbitration in London, or to obtain an order compelling arbitration (see section 4 of the United States Arbitration Act of 1925, as amended, 9 U.S.C. § 4), is irrelevant to interpreting Illinois' long-arm statute. The issue under the statute is jurisdiction rather than Astilleros' contract rights.

A suit for indemnity is often, though presumably not here, contractual. Goff & Jones, The Law of Restitution 258 (2d ed. 1978). And often—and here—it is at least quasi-contractual in the following sense: the parties have a preexisting contractual relationship and the suit asks the court to find in effect that they would have provided expressly for indemnity had they foreseen the incident that has given rise to the indemnity claim. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 133–34, 76 S.Ct. 232, 237, 100 L.Ed. 133 (1956), and *Weyerhaeuser S.S. Co. v. Nacirema Operating Co.*, 355 U.S. 563, 565, 78 S.Ct. 438, 439, 2 L.Ed.2d 491 (1958), so interpret maritime indemnity. If, as the cross-claim alleges, the oil spill was due not to any fault on Amoco's part but to Astilleros' negligence in designing or constructing the ship, this implies that Astilleros could have avoided a disastrous accident, for which both parties may be liable, more easily than

Amoco could have. Therefore, if the parties had foreseen the possibility of such a disaster, they would have agreed that Astilleros would bear the full cost, for this would have created the right incentives for avoiding the disaster at the lowest possible cost. They would in other words have inserted an explicit provision for Astilleros to indemnify Amoco in the event that disaster struck, Amoco was sued, and judgment was entered against it. Cf. Comment, *The Allocation of Loss Among Joint Tortfeasors*, 41 So.Cal.L.Rev. 728, 743–48 (1968).

This reasoning shows that Amoco's claim for indemnity, though not strictly contractual, has the form of a contractual argument—enough so that it can be said to "arise from" the negotiation and signing of the shipbuilding contract. However, the cross-claim also asks, in the alternative, for contribution—that is, a partial rather than complete shifting of liability from Amoco to Astilleros, see Prosser, Handbook of the Law of Torts 310 (4th ed.1971)—and it is harder to conceptualize contribution than indemnity in contractual terms. But where as in this case it is sought merely as a fallback to a claim for quasi-contractual indemnity, we consider it sufficiently related to the contract giving rise to the indemnity claim also to be within the reach of the Illinois long-arm statute. A cause of action need not be contractual to be within section 17(a)(1). *Dalton v. Blanford*, 67 Ill.App.3d 91, 97, 23 Ill.Dec. 39, 43, 383 N.E.2d 806, 810 (1978). Using an inadvertently apt metaphor, the Illinois Appellate Court has said that the statutory phrase "arising from" "requires only that the plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted to the jurisdiction of the Illinois courts," *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 253, 219 N.E.2d 646, 651 (1966), and that test is satisfied here.

We must decide next whether the Illinois statute, so interpreted, violates due process. It clearly would not have under the regime of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), which allowed a state to

assert jurisdiction over a nonresident whose "operations establish[ed] sufficient contacts or ties with the state ... to make it reasonable or just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations" that the nonresident had incurred in the state. This language invites concentration on the reasonableness of allowing the state to assert jurisdiction in the circumstances of the particular case. It would be reasonable in this case. Amoco, a resident of Illinois, is complaining about conduct arising from a contract that Astilleros voluntarily negotiated with Amoco, and signed, in Illinois; Illinois is the only place where Amoco can, in the same forum, both defend against Astilleros' suit and prosecute its own claim against Astilleros growing out of that suit; and Astilleros cannot argue surprise at having to defend a suit arising from a contract negotiated and signed in Illinois with an Illinois enterprise.

█ But cases subsequent to *International Shoe,* notably *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958), indicated to one observer as early as 1958 that there was more to the due process limitations on personal jurisdiction than reasonableness; that "the concept of territorial limitations on state power [was] still a vital one." Kurland, *The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts,* 25 U.Chi.L.Rev. 569, 623 (1958). This observation was confirmed recently in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294, 100 S.Ct. 559, 565, 62 L.Ed.2d 490 (1980): "Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State [from that of its domicile]; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." The doctrine of *forum non conveniens* (not in issue in these appeals) should provide adequate protection

for a nonresident defendant's interest in not having to defend himself in some unreasonably remote location, and this is the only consideration we would have to worry about in a unitary system, whether that system comprised the courts of a single state or the federal courts, which are the courts of one nation. But the states do not comprise a unitary judicial system; they are distinct if limited sovereignties; and the sovereignty of each limits the power of the others over nonresidents. See 444 U.S. at 293, 100 S.Ct. at 565. This point has even greater force when a state court (or, as here, a federal court exercising the powers granted to the state court by state law) is trying to exercise jurisdiction over a foreigner.

█ But this is a very different case from *Volkswagen.* The defendants there were two New York companies—an automobile distributor and one of its dealers—that had never done business in Oklahoma. The distributor sold a car to the dealer, who resold it to the plaintiffs, also New Yorkers. While driving through Oklahoma the plaintiffs had an accident allegedly because of the car's defective design. The defendants had never "been" in Oklahoma in any sense and were therefore beyond the reach of the state's sovereign powers, which are territorially limited. But Astilleros had "been" in Chicago. The contract out of which Amoco's cause of action arises was signed there following extensive negotiations there, and followed by other meetings there related to the *Amoco Cadiz* contract and to contracts for other tankers to be built for Amoco. Astilleros had the protection of Illinois' laws all the while that it was transacting business with Amoco in Chicago. It had, we think, a sufficient presence within Illinois to satisfy the territorial notions that *Volkswagen* brought back into due process analysis of personal jurisdiction.

The last question we consider is whether the district court had personal jurisdiction over the French plaintiffs' suit against Astilleros. The relationship between the contract signed in Illinois and the oil spill is looser than that between the contract and

Amoco's cross-claim. The French plaintiffs' claim is not quasi-contractual and is not being prosecuted in either the place of the wrong or the domicile of one of the parties. But if it seems odd for the French to be suing the Spanish in a court in Chicago because of an oil spill off the French coast, it would also be odd if, though the French can sue Amoco in Chicago and Amoco can bring in Astilleros as a third-party defendant here, the French must go to Spain to sue Astilleros.

The French plaintiffs claim that Astilleros made a defective product which injured them. Such a claim could readily be said to arise from the negotiating and signing, in Illinois, of the contract for the construction of the allegedly defective product if the injury had been to the purchaser, Amoco, or—now that little attention is paid to privity of contract in tort suits—to a purchaser from Amoco. But the injury was to persons outside the chain of title from Astilleros. Although products liability suits brought by such "bystanders" are becoming common, see, e.g., *Codling v. Paglia*, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973), the fact remains that the French plaintiffs are not in the chain of title from Astilleros that began with its signing of the contract with Amoco Tankers, as they would be if this were the usual sort of products liability case; and since they are not, the place of that signing may seem to be irrelevant to their suit. But they were not harmed just by the defective condition of the ship; they were harmed by Amoco's operation of the ship in its defective condition, and the negotiation and signing of the contract were critical steps in the chain of events that led to the oil spill. So there is a sense in which the spill and resulting damage may be said to arise from the transaction of business in Illinois between Amoco and Astilleros; and if this conclusion is not compelled by, it is at least consistent with, the statutory language and has the practical virtue of allowing all claims arising out of a catastrophe to be litigated at the same time in the same court.

And it does not offend due process. In terms of legitimate exercise of sovereign power (*Volkswagen*), rather than reasonable procedure (*International Shoe*), the only question is whether the defendant was in Illinois in a substantial enough way to subject it to the state's power. The plaintiffs' domicile is irrelevant. So if negotiating and signing the contract in Illinois subjected Astilleros to Illinois' territorially limited sovereignty for purposes of the cross-claim, they likewise subjected it to Illinois' sovereignty for purposes of the complaint. Although we do not think *Volkswagen* makes reasonableness irrelevant, see *Froning & Deppe, Inc. v. Continental Ill. Nat'l Bank & Trust Co.*, 695 F.2d 289 at 293 (7th Cir.1982), once Chicago is conceded to be a reasonable site for the French plaintiffs' suit against Amoco and for Amoco's suit against Astilleros, considerations of judicial economy make it a reasonable site for the French plaintiffs' suit against Astilleros as well. The additional hardship to Astilleros cannot be great and is outweighed by the advantages of consolidating all the claims.

Since the district court had jurisdiction over both the complaint and cross-claim against Astilleros, the default judgments are

AFFIRMED.