**ROCO CARRIERS, LTD.,**
Plaintiff–Appellee,

v.

**M/V NURNBERG EXPRESS, her engines, boilers, etc., Hapag–Lloyd Aktiengesellschaft, and Aid Export Trucking Corp., Defendants,**

**Aid Export Trucking Corp.,**
Defendant–Appellant.

Docket Nos. 528, 529, 89–7768, 89–7770.

United States Court of Appeals,
Second Circuit.

Argued Jan. 8, 1990.

Decided March 22, 1990.

Norman Ingber, Salzman, Ingber & Winer, New York City, for defendant-appellant.

Stephen A. Agus, New York City (Agus & Hatem, New York City, of counsel), for plaintiff-appellee.

Before MESKILL and NEWMAN, Circuit Judges, and WEINSTEIN,[*] District Judge.

MESKILL, Circuit Judge:

Defendant-appellant Aid Export Trucking Corporation (Aid Export) appeals from judgments entered in the United States District Court for the Southern District of New York, Keenan, *J.*, in two cases consolidated by the district court involving the loss of cargo. We are presented with the questions whether pendent party jurisdiction is available in admiralty cases, whether a pendent party may take advantage of the provisions of 28 U.S.C. § 1292(a)(3), which permit interlocutory appeals in admiralty cases, and whether the district court properly granted summary judgment in favor of plaintiff-appellee Roco Carriers, Ltd. (Roco) and against Aid Export.

## BACKGROUND

Most of the facts are undisputed. Roco, a New York corporation, is a non-vessel operating common carrier. In September 1982, it engaged Aid Export, also a New York corporation and a warehouseman and trucking company, to prepare for shipment 100 cartons of "Zippo" lighters. The cartons were allegedly loaded into a container, and the container was sealed at Aid Ex-

---

[*] Hon. Jack B. Weinstein, United States District Judge for the Eastern District of New York, sitting by designation.

port's warehouse. Aid Export transported the container by truck to a stevedoring company and terminal operator hired by Hapag–Lloyd Aktiengesellschaft (Hapag–Lloyd) so that the container could be loaded on Hapag–Lloyd's vessel, the NURNBERG EXPRESS.

Before the truck entered the terminal, the container was opened and the Aid Export seal broken in the presence of Aid Export's driver so that a Hapag–Lloyd representative could inspect how certain hazardous cargo also in the container was secured. After the container was inspected, it was resealed with a Hapag–Lloyd seal. The truck and the container were then weighed, and the cargo weight was calculated to be 19,765 pounds. The bill of lading prepared by Roco, however, listed the cargo weight at 20,608 pounds.

The container was loaded onto the NURNBERG EXPRESS. It was then transported to Hamburg, West Germany, where it was unloaded from the ship and a West German customs seal was placed on it. The container was then delivered by truck to a warehouse, where it was stripped. At the warehouse, thirty-one of the one hundred cartons were missing, even though the Hapag–Lloyd and West German seals appeared intact.

In February 1983, Roco again used Aid Export to prepare a shipment of 100 cartons of lighters. Aid Export loaded the cartons into a container, sealed the container with one of its seals and delivered it by truck to a terminal for loading on Hapag–Lloyd's ship, the DUSSELDORF EXPRESS. At the terminal, the truck and cargo were weighed, and the cargo weight was calculated at 29,230 pounds. Once again, this was inconsistent with the bill of lading, which listed the cargo weight to be 30,313 pounds.

Upon arrival in West Germany, a West German customs seal was placed on the container, and it was delivered to a warehouse in Hamburg. After the container was stripped at the warehouse, thirty-four cartons were missing. The Aid Export and West German seals appeared intact when the container was stripped.

Roco brought separate actions regarding the two shipments against Hapag–Lloyd and Aid Export, alleging admiralty jurisdiction in both. The district court consolidated the two actions for all purposes. Hapag–Lloyd moved for summary judgment, and Roco made a cross-motion for summary judgment against Hapag–Lloyd or, in the alternative, against Aid Export. The court granted Hapag–Lloyd's motion and dismissed the complaint as to Hapag–Lloyd. It also granted Roco's cross-motion against Aid Export, concluding that Aid Export had failed to raise a genuine issue of material fact in the face of Roco's *prima facie* showing of conversion.

## DISCUSSION

Aid Export argues on appeal that the district court improperly granted summary judgment when genuine issues of material fact remained about who had possession of the cargo when the loss occurred. Roco questions whether Aid Export, as a pendent party against whom only a state law claim is asserted, can avail itself of the provisions of 28 U.S.C. § 1292(a)(3), which, in admiralty cases, permit interlocutory appeals from determinations of liability prior to an award of damages. However, neither party, before us or below, has raised the more fundamental question whether pendent party jurisdiction is available at all in admiralty cases. In light of the Supreme Court's decision in *Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), we must first address the question of subject matter jurisdiction over the claim against Aid Export. *See Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d Cir.1986) ("[A] federal court has a duty on its own motion to consider whether there is properly federal jurisdiction in the case before it."), *cert. dismissed sub nom. Ancor Holdings, N.V. v. Republic of Philippines*, 480 U.S. 942, 107 S.Ct. 1597, 94 L.Ed.2d 784 *cert. denied sub nom. New York Land Co. v. Republic of Philippines*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987).

## A. Pendent Party Jurisdiction After Finley

■ Roco's claim against Hapag–Lloyd falls within the scope of the district court's admiralty jurisdiction. *See* 28 U.S.C. § 1333(1). However, inasmuch as any claim against Aid Export arose while the cargo was on land, Roco's claim against Aid Export is grounded on state law and not within federal admiralty jurisdiction. *See Colgate Palmolive Co. v. S/S DART CANADA,* 724 F.2d 313, 315 (2d Cir.1983), *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Leather's Best, Inc. v. S.S. MORMACLYNX,* 451 F.2d 800, 808 (2d Cir.1971). Moreover, because Roco and Aid Export are citizens of the same state, there is no diversity of citizenship to serve as an independent ground for asserting subject matter jurisdiction. The only other basis for jurisdiction over the claim against Aid Export might be pendent party jurisdiction.

■ The established rule of this Circuit has been that pendent party jurisdiction is available in admiralty cases in those instances in which the state law claim against the additional party arises out of a common nucleus of operative facts with the admiralty claim and the resolution of the factually connected claims in a single proceeding would further the interests of conserving judicial resources and fairness to the parties. *E.g., National Resources Trading, Inc. v. Trans Freight Lines,* 766 F.2d 65, 68 (2d Cir.1985); *Leather's Best,* 451 F.2d at 809–11. *See generally United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). This is also the rule in other circuits. *E.g., Feigler v. Tidex, Inc.,* 826 F.2d 1435, 1439 (5th Cir.1987); *In re Oil Spill by Amoco Cadiz Off Coast of France,* 699 F.2d 909, 913–14 (7th Cir.), *cert. denied sub nom. Astilleros Espanoles, S.A. v. Standard Oil Co. (Indiana),* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 172 (1983). However, after the Supreme Court's decision in *Finley,* the continued viability of the doctrine of pendent party jurisdiction in any context is seriously in question. *See Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 643 n. 5 (2d Cir.1989) (suggesting in dicta that "pendent-party jurisdiction apparently is no longer a viable concept").

In *Finley,* the Supreme Court held that pendent party jurisdiction is not available when the primary claim is brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b). 109 S.Ct. at 2010. Employing a restrictive reading of pendent party jurisdiction, the Court determined that factual similarity and judicial economy alone are insufficient to exert jurisdiction over state law claims involving additional parties without an independent basis for jurisdiction. *Id.* at 2008. Relying on the general proposition that a federal court's subject matter jurisdiction is limited to the bounds set forth by the Constitution *and* to the extent that, within those limits, jurisdiction is authorized by Congress, *id.* at 2005–06; *see The Mayor v. Cooper,* 73 U.S. (6 Wall.) 247, 252, 18 L.Ed. 851 (1868); *Ex Parte Bollman,* 8 U.S. (4 Cranch) 75, 93, 2 L.Ed. 554 (1807), the Court concluded that pendent party jurisdiction is available only if the statute providing federal jurisdiction over the primary claim can also be interpreted as specifically conferring jurisdiction over other claims against additional parties. 109 S.Ct. at 2008–09; *see also Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

■ An action brought into federal court by way of the FTCA, such as that in *Finley,* and an action brought pursuant to the court's admiralty jurisdiction, such as that in the instant case, are by no means identical in terms of the nature of the relevant statutory grants of jurisdiction. First, a federal court's jurisdiction under the FTCA is predicated on a waiver of sovereign immunity permitting individuals to bring tort claims against the United States. Jurisdictional grants waiving sovereign immunity are ordinarily interpreted narrowly. *See United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941).

This factor is entirely absent in the context of the instant case.

Second, underlying admiralty jurisdiction is the sound policy of permitting claims arising in the admiralty or maritime context to be resolved in a single setting. *See British Transp. Comm'n v. United States*, 354 U.S. 129, 137–38, 77 S.Ct. 1103, 1107, 1 L.Ed.2d 1234 (1957). This is not merely a matter of convenience for the parties. Rather, it stems from the historical recognition of the importance that maritime claims in particular be subjected to efficient and uniform procedures and treatment. *See In Re Oil Spill*, 699 F.2d at 913–14.

Third, and most important for the analysis under *Finley*, the language of the relevant statutory grants of jurisdiction in *Finley* and in our case are substantially different. The jurisdictional statute for FTCA claims provides, in pertinent part, that the federal courts "shall have exclusive jurisdiction of civil actions on claims against the United States." 28 U.S.C. § 1346(b). The Supreme Court placed great significance on the fact that this jurisdictional grant was limited to claims against a specific party— the United States. It therefore concluded that section 1346(b) "defines jurisdiction in a manner that does not reach defendants other than the United States." 109 S.Ct. at 2009. By contrast, the statute providing admiralty jurisdiction is strikingly broad: It confers exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1).

The importance of this last distinction is illustrated by a comparison of cases in other circuits decided in the wake of *Finley*. The Eighth Circuit, in *Lockard v. Missouri Pacific R.R. Co.*, 894 F.2d 299 (8th Cir. 1990), applied *Finley*'s strict rule of construction to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51, 56, and held that the FELA's jurisdictional grant did not extend to pendent party claims. 894 F.2d at 302–03. The court's holding rested on the language of the FELA, which imposes liability on "[e]very common carrier by railroad" for injuries sustained by railroad employees. 45 U.S.C. § 51. Thus,

the court concluded that the FELA, like the FTCA, created "a grant of jurisdiction over claims involving particular parties," and the statutory language simply could not be read to include claims against other parties. 894 F.2d at 302; *see also Stallworth v. City of Cleveland*, 893 F.2d 830, 838 (6th Cir.1990) (no pendent party jurisdiction under 42 U.S.C. § 1983 over state law claim of loss of consortium); *Iron Workers Mid–South Pension Fund v. Terotechnology Corp.*, 891 F.2d 548, 551 (5th Cir.1990) (no pendent party jurisdiction under Employee Retirement Income Security Act, 29 U.S.C. § 1132(e), over state law claim to enforce lien).

By contrast, in *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404 (9th Cir.1989), the Ninth Circuit determined that the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1330, does provide for pendent party jurisdiction. *Id.* at 1409–10. The *Teledyne* Court found the language of the FSIA's jurisdictional grant unlike that of the FTCA in that the former provided jurisdiction over a "civil *action* against a foreign state," 28 U.S.C. § 1330(a) (emphasis added), while the latter provided jurisdiction only for "*claims* against the United States." 28 U.S.C. § 1346(b) (emphasis added). The Ninth Circuit concluded that the choice of the word "action," rather than "claim," in the FSIA indicated that the FSIA's jurisdictional grant included claims against parties other than foreign states that arise out of the same nucleus of operative facts and thus would ordinarily be part of the same action as the primary claim. 892 F.2d at 1409.

■ The admiralty jurisdictional statute does not contain a limitation as to a certain category of parties, as does the FTCA and the FELA. Nor does it contain a limitation as to a certain category of claims. Rather, it creates jurisdiction over an admiralty "case." 28 U.S.C. § 1333(1). Therefore, while the FTCA confers jurisdiction over claims "against the United States and no one else," *Finley*, 109 S.Ct. at 2008, admiralty jurisdiction extends to an entire case, including non-admiralty claims against a second defendant. *See Teledyne*, 892 F.2d

at 1409. *See generally Osborn v. United States Bank*, 22 U.S. (9 Wheat.) 737, 822–23, 6 L.Ed. 204 (1824).

In light of the broadly worded jurisdictional grant over admiralty cases and "the strong admiralty policy in favor of providing efficient procedures for resolving maritime disputes," *In Re Oil Spill*, 699 F.2d at 914, we see no reason at this juncture to depart from the established rule of this Circuit that pendent party jurisdiction is available in the unique area of admiralty. Accordingly, the district court had subject matter jurisdiction over the pendent party claim against Aid Export, and it did not abuse its discretion in exercising that jurisdiction. *See Leather's Best*, 451 F.2d at 811.

B. *Appellate Jurisdiction Under § 1292(a)(3)*

■ Roco argues that, because Aid Export is a pendent party and the claim against it is grounded in state law rather than admiralty, Aid Export may not avail itself of the provisions of 28 U.S.C. § 1292(a)(3) permitting interlocutory appeals in admiralty actions. Neither party has provided us with case law specifically addressing that question, and the issue appears to be a novel one. Nevertheless, it need not detain us for long.

Section 1292(a)(3) provides, in pertinent part, that appeals may be taken from "[i]nterlocutory decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." This exception to the final judgment rule has its historical origins in the once common practice in admiralty cases of referring the determination of damages to a master or commissioner after resolving the question of liability. *See* Fed.R.Civ.P. 53(b). Section 1292(a)(3) permitted parties to appeal the finding of liability before facing a potentially costly damages proceeding. *See* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.19[3], at 210 (2d ed. 1989).

We see no reason to deny a pendent party the right to appeal an interlocutory determination of liability when the same decision can be appealed by the other parties in the case. The determination of liability against Aid Export is integrally linked with the determination of non-liability on the part of Hapag–Lloyd. Moreover, the language of section 1292(a)(3) is not limited to admiralty *claims;* instead, it refers to admiralty *cases.* The state law claim against Aid Export is in federal court only because Roco is permitted to append it to the admiralty claim against Hapag–Lloyd. It is thus part of the admiralty case, and we therefore conclude that we have appellate jurisdiction.

C. *Summary Judgment*

■ Finally we reach the merits of Aid Export's appeal. Aid Export argues first that the district court improperly saddled it with the burden of coming forward with an explanation of the loss of the cargo. Second, it contends that the district court erred in granting summary judgment when genuine issues of material fact exist about who had possession of the cargo when the loss occurred.

■ Under New York law, which governs Roco's claim against Aid Export, once a plaintiff has presented uncontroverted evidence of delivery of goods to a warehouseman and of the warehouseman's failure to honor the demand for the release of stored goods, the warehouseman bears the burden of providing an explanation for the loss of the goods supported by evidence sufficient to create a question of fact. *Colgate Palmolive*, 724 F.2d at 317; *I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 664, 409 N.E.2d 849, 853–54, 431 N.Y.S.2d 372, 378–79 (1980). The warehouseman's explanation "cannot be merely the product of speculation and conjecture" and must show not just "what might conceivably have happened to the goods, but rather what actually happened to the goods." *I.C.C. Metals*, 50 N.Y.2d at 664 n. 3, 409 N.E.2d at 853 n. 3, 431 N.Y.S.2d at 377 n. 3.

■ Aid Export argues that this burden-shifting rule should not be applied to it because a factual dispute exists over

whether the loss occurred while the cargo of lighters was in its possession. Indeed, the rule is predicated on the "practical necessity" that results from the warehouseman's exclusive control over stored goods, placing it in the best position to explain any loss of the goods. *Id.* at 665, 409 N.E.2d at 854, 431 N.Y.S.2d at 377. Yet, the mere allegation that the loss occurred elsewhere does not excuse the warehouseman from meeting its burden of offering a sufficiently supported explanation any more than would an allegation that the goods were stolen by some third party despite the warehouseman's exercise of due care.

In an effort to create a factual dispute on the issue of who had possession of the cargo when the loss took place, Aid Export relies almost exclusively on the affidavit of Sabato F. Catucci, its president. In his affidavit, Catucci asserts that he personally counted the cartons as they were being loaded into the container. He does not and apparently cannot state, however, that he observed the container at all times prior to its being sealed. Catucci maintains in the affidavit that the plastic seals that were used on the container were capable of being bypassed, but provides no basis or support for this conclusory assertion. He also states that the discrepancy in the weight of the cargo discovered at the terminal "could be due to something as simple as the amount of gas in the trucks." Aid Export attempts to bolster this explanation for the weight discrepancy by pointing to the deposition testimony of a Hapag–Lloyd employee who commented that a discrepancy of two or three hundred pounds was not out of the ordinary. Yet, Aid Export fails to provide a specific factual basis, as opposed to an inexact guess about what "could" be, that would explain the weight discrepancies of 843 and 1,083 pounds in the two shipments.

■ The conclusory statements and unsupported assertions presented by Aid Export are insufficient to meets its burden. A party opposing a motion for summary judgment must set forth specific facts demonstrating the existence of a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on which Aid Export relies falls short of creating a genuine factual dispute about the reliability of the plastic seals, the weight discrepancies or the integrity of the cargo while the cargo was in its possession.

Roco made a *prima facie* showing of conversion under New York law. Aid Export, after several years of discovery, is unable to rebut that showing by coming forward with adequate support for its explanation for the loss of the cargo. In these circumstances, Roco is entitled to summary judgment in its favor.

## CONCLUSION

The judgments of the district court are affirmed.