**ST. LOUIS COLD DRAWN, INC., Plaintiff,**

v.

**BEELMAN RIVER TERMINALS, INC., Defendant.**

**No. 4:93CV2414–DJS.**

United States District Court, E.D. Missouri, Eastern Division.

Oct. 5, 1994.

Gary T. Sacks, Partner, Goldstein and Price, St. Louis, MO, for plaintiff.

Ronald E. Fox, Sandberg and Phoenix, St. Louis, MO, for defendant.

## ORDER

STOHR, District Judge.

This matter is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction. Plaintiff initiated this action in federal court seeking to invoke admiralty jurisdiction. Defendant contends that admiralty jurisdiction does not lie in this case and thus the case should be dismissed.

The facts relevant to this action, viewed in a light most favorable to plaintiff, are as follows. Defendant Beelman operates a terminal facility on the right descending shore of the Upper Mississippi River. Complaint, ¶ 4. Beelman is involved in the business of unloading and storing cargo from river barges moored at its terminal facility. Complaint, ¶ 5. Plaintiff is the owner of a quantity of steel which was delivered by barge to defendant's facility, unloaded by defendant and stored by defendant at its terminal facility. Complaint, ¶ 5. Plaintiff alleges in its complaint that while stored at defendant's terminal facility, the steel was damaged through defendant's "fault, carelessness or negligence." Complaint, ¶ 7.

Relying on this language in paragraph 7 of plaintiff's complaint, defendant argues that plaintiff's cause of action sounds in tort and should be dismissed for lack of subject matter jurisdiction. In contrast, plaintiff argues that, because the damage sustained by the goods was "incident to [those goods] having been unloaded by [defendant]" from a seagoing vessel, pursuant to a contract entered into between the parties, this action constitutes a "maritime breach of contract claim," to which admiralty jurisdiction presumably applies. Memorandum in Opposition, pp. 3–4. Nevertheless, regardless of the characterization of the cause of action, the Court finds that admiralty jurisdiction is lacking here,

and thus defendant's motion to dismiss is well taken.

Notwithstanding plaintiff's effort to label this a maritime contract action, the Court notes that the majority of caselaw in this area fails to make such an explicit classification or distinction. Thus understandably, Title 28 U.S.C. § 1333 provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction...." 28 U.S.C. § 1333(1). The United States Code draws no distinction between contract or tort actions. For purposes of the pending motion, the Court will first construe plaintiff's complaint as a tort-based action and then as a contract-based action.

█ For admiralty jurisdiction over a tort action to properly lie in this Court, "a potential hazard to maritime commerce [must] arise out of an activity that bears a substantial relationship to traditional maritime activity." *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 675, n. 5, 102 S.Ct. 2654, 2658, n. 5, 73 L.Ed.2d 300 (1982) (emphasis added) (limitation of holding to tort-based actions is implied, not explicitly stated). Alternatively stated, the Supreme Court's two-pronged test for the existence of admiralty jurisdiction over a tort action requires: (1) a hazard to maritime commerce, (2) caused by an activity that bears a substantial relationship to traditional maritime activity. *Id.*

█ The parties do not dispute that the first prong of the *Foremost* test is met here, thus the Court will assume, without deciding, that a "hazard to maritime commerce" is present here. Proceeding to the second prong of the *Foremost* test, "[o]ur cases have made clear that the relevant "activity" [for jurisdictional purposes] is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose." *Sisson v. Ruby*, 497 U.S. 358, 364, 110 S.Ct. 2892, 2897, 111 L.Ed.2d 292 (1990). For example, in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), a passenger aircraft encountered a large flock of birds, which were sucked into the aircraft's engine, causing it to stall. The aircraft ultimately crashed into Lake Erie, and an admi-ralty action was initiated against the City of Cleveland. The Supreme Court concluded that for jurisdictional purposes the relevant activity was not a plane sinking in Lake Erie but rather air travel generally, and thus admiralty jurisdiction did not lie. *Id.* 409 U.S. at 269–70, 93 S.Ct. at 505, *quoted in Sisson*, 497 U.S. at 364, 110 S.Ct. at 2897.

The Circuits have interpreted this aspect of the jurisdictional inquiry variously. After *Executive Jet* but prior to the Supreme Court's decision in *Foremost*, the Fifth Circuit adopted a four-factor test for deciding whether an activity is substantially related to traditional maritime activity. *See Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir.1973). The Fifth Circuit's four *Kelly* factors are "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." *Id.* In the First, Ninth and Eleventh Circuits, this test has dominated the vista without significant modification, even after *Foremost*. *See, e.g., Drake v. Raymark Industries, Inc.*, 772 F.2d 1007, 1015 (1st Cir. 1985); *Guidry v. Durkin*, 834 F.2d 1465, 1471 (9th Cir.1987); *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1051 (11th Cir.1989).

Similarly, the Fourth Circuit appears to follow *Kelly*, even in the wake of *Foremost*, although it is unclear how closely. *Compare Oman v. Johns–Manville Corp.*, 764 F.2d 224, 230, and n. 3 (4th Cir.1985) (en banc) (stating that "a thorough analysis of the nexus requirement should include a consideration of *at least* [the *Kelly* factors]") (emphasis added), *with Bubla v. Bradshaw*, 795 F.2d 349, 351 (4th Cir.1986) (implicitly treating *Kelly* factors as exclusive). The precise state of the law in the Fifth Circuit after *Foremost* is unclear. *Compare Molett v. Penrod Drilling Co.*, 826 F.2d 1419, 1426 (5th Cir.1987) (*Molett I*) (considering several other factors, in addition to the *Kelly* factors), *with Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1224–26 (5th Cir.1989) (*Molett II*) (applying only *Kelly* factors).

Still other circuits have adopted different approaches. The Seventh Circuit has held

that an activity must either be commercial or involve navigation to satisfy the "traditional maritime activity" standard. *See In re Complaint of Sisson,* 867 F.2d 341, 345 (7th Cir. 1989), *rev'd on other grounds,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). The Second Circuit requires the same "substantial relationship to traditional maritime activity" contemplated by the Supreme Court in *Foremost* and *Executive Jet,* without specifying the factors to be considered in determining whether this requirement is met. *See Keene Corp. v. United States,* 700 F.2d 836, 844 (2d Cir.1983); *Kelly v. United States,* 531 F.2d 1144, 1147–48 (2d Cir.1976). The Sixth Circuit has criticized the Seventh Circuit's analysis in *In re Complaint of Sisson* as "an indefensibly narrow reading of *Foremost.*" [1] *In re Young,* 872 F.2d 176, 178–79, n. 4 (6th Cir.1989). However, the Sixth Circuit has not clearly set forth the test it might apply in similar circumstances. *Cf. Petersen v. Chesapeake & Ohio R. Co.,* 784 F.2d 732, 736 (6th Cir.1986). Finally, the Eighth Circuit has not expressly adopted the four *Kelly* factors, but the Eighth Circuit stated that the "reasoning [underlying the *Kelly* factors] is quite persuasive." *St. Hilaire Moye v. Henderson,* 496 F.2d 973, 978 (8th Cir.1974).

Despite the obvious uncertainty which exists among the Circuits, the United States Supreme Court has declined to further refine the formula, stating that "the formula initially suggested by *Executive Jet* and refined by *Foremost* provides appropriate and sufficient guidance to the federal courts." *Sisson,* 497 U.S. at 366, n. 4, 110 S.Ct. at 2901, n. 4. However, the Supreme Court has made clear that navigation is not the only activity sufficient to confer maritime jurisdiction upon this Court. *Id.* at 367, 110 S.Ct. at 2898. Rather the fundamental interest giving rise to maritime jurisdiction is "the protection of maritime commerce." *Foremost,* 457 U.S. at 674, 102 S.Ct. at 2658.

With these principles in mind, the Court proceeds to an analysis of the facts at bar. In *Sisson,* the Supreme Court indicated that the storage and maintenance of a vessel at a marina located on the navigable waters is substantially related to "traditional maritime activity" given the broad perspective of the "substantially related" prong of *Foremost* test. *Cf. Kelly,* 485 F.2d at 525. However, in this case, it is not the storage of the vessel which is at issue. Rather the storage here involves cargo removed from a vessel. The Court finds that this next step makes the connection to "traditional maritime activity" too attenuated to give rise to admiralty jurisdiction over a tort claim. To hold otherwise would require that any goods transported over the navigable waters provide the basis for maritime jurisdiction. The fact that the navigable water caused the damage, similar to *Executive Jet,* was merely a coincidence, which is insufficient to invoke this Court's jurisdiction. Further, this Court finds that the fact that the damaged goods might have been stored at a site located near the navigable water is also insufficient to invoke maritime jurisdiction.

In *Whitcombe v. Stevedoring Services of America,* 2 F.3d 312 (9th Cir.1993), the Ninth Circuit concluded that "suits against terminal operators[, such as Beelman,] for cargo damage or loss while in storage are governed by state rather than admiralty law." *Id.* at 314; *see also Solano v. Beilby,* 761 F.2d 1369, 1372 (9th Cir.1985). The Second Circuit reached an identical conclusion on at least three occasions. *Roco Carriers, Ltd. v. M/V NURNBERG EXPRESS,* 899 F.2d 1292 (2d Cir. 1990); *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313 (2d Cir.1983) *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir.1971). In light of the abundant authority which supports defendant's position that if this is a tort-based action, admiralty jurisdiction does not lie here, the Court will dismiss plaintiff's complaint for lack of jurisdiction, to the extent it constitutes a tort action.

■ Plaintiff appears to concede the difficulty of asserting admiralty jurisdiction in a tort-based action, as it has not directly challenged defendant's contention that if this is a

---

1. The district court originally dismissed this action for lack of subject matter jurisdiction, the Seventh Circuit affirmed, 867 F.2d 341 (7th Cir.

1989), however, the Supreme Court, applying the same factors but reaching the opposite conclusion, reversed and remanded the matter.

tort-based action, admiralty jurisdiction does not apply. Rather, plaintiff argues that this is not a tort-based action, but an action for breach of a maritime contract. Although the Court has some concern that such a characterization places form over substance, the Court will proceed to consider plaintiff's complaint as a contract-based action.

Presumably plaintiff's argument is that because the contract at issue arose out of the transport of goods over the navigable waters, maritime jurisdiction is appropriate here. The Court is no more persuaded that admiralty jurisdiction is proper here, based on the existence of an alleged maritime contract, than by the existence of a maritime tort.

A treatise on admiralty and maritime law defines a maritime contract as follows:

> the subject matter of the contract must be directly and intimately related to the operation of a vessel and navigation; it is not enough that the contact relate in some *preliminary* (shoreside) manner to maritime affairs. Contracts that are not directly related to maritime matters and ship navigation afford no justification for the application of the uniform admiralty law and are best left for decision under state law contract principles.

1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3–10, at 111 (2d ed. 1994) (emphasis original). Unfortunately, the Supreme Court has yet to define what makes a contract "maritime in nature." 14 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3675, pp. 471–72 (1985). However, the Supreme Court has elaborated on the difficulty of classifying a contract as maritime for purposes of determining the applicability of admiralty law.

> The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw. Precedent and usage are helpful insofar as they exclude or include certain common types of contract; [for example,] a contract to repair, ... or to insure a ship, ... is maritime, but a contract to build a ship is not.

*Kossick v. United Fruit Company,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961).

In support of its position that admiralty jurisdiction lies in this case, plaintiff cites *Hoogovens Estel Verkoopkantoor, B.V. of Ijmuiden v. Ceres Terminals, Inc.,* 1984 A.M.C. 1417, 1983 WL 604 (S.D.N.Y.1983). However, that case is not persuasive because it involved damage inflicted while unloading cargo from a seagoing vessel. *Id.* at 1417. When the cargo at issue was damaged by water and then stored with other, undamaged cargo, the remaining cargo was damaged. *Id.* The district court in New York concluded that admiralty jurisdiction was proper based on the breach of maritime contract for the unloading of goods.

The critical distinction between the facts of *Hoogovens* and this case is that in *Hoogovens,* the cargo was damaged both during shipment and while being unloaded, prior to storage. *Id.* Here the cargo at issue was damaged by flood waters, once the goods had been placed in storage at defendant's terminal facility. Complaint, ¶ 7. The Court concludes that the storage of goods removed from a seagoing vessel is a "shoreside matter," only indirectly related to maritime affairs. *Cf.* 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 3–10, at 111. To the extent that plaintiff argues that this entire contract is a maritime contract because one portion of the contract, that part governing the removal of goods from a vessel, is maritime, the Court is not persuaded. Such a result places the form of the contract over the actual facts before the Court.

The Court notes that the *Hoogovens* case cited by plaintiff does go further to suggest that defendant's agreement to store goods removed from a ship is "incident to a maritime contract" and thus governed by admiralty law. However, this Court is unwilling to rely on that case. Rather, the Court relies on cases such as *Colgate Palmolive,* where the Second Circuit concluded that, notwithstanding the existence of a contract for the storage and shipment of goods, a cargo owner's action for conversion was a state law action, not governed by admiralty law. *Colgate Palmolive,* 724 F.2d at 317. Similarly,

in *Roco Carriers,* the Second Circuit held that "inasmuch as any claim against [the terminal operator] arose while the cargo was on land, [it] is grounded on state law and not within federal admiralty jurisdiction." 899 F.2d at 1295. *Cf. Leather's Best,* 451 F.2d at 806.

■ It is clear from precedent that a contract for the carriage of goods wholly by water is a maritime contract, falling within this Court's admiralty jurisdiction. *See, e.g., United States v. Mississippi Valley Barge Line Co.,* 285 F.2d 381, 387 (8th Cir.1960). However, where the contract at issue involves both the transport of goods and the storage of goods, the boundaries of this Court's admiralty jurisdiction become much less precise. The parties cannot dispute that a contract to load or unload cargo and to transport that cargo on the navigable waterways is maritime in nature and thus under this Court's admiralty jurisdiction. *See, e.g., Howmet Corp. v. Tokyo Shipping Co.,* 320 F.Supp. 975 (D.C.Del.1971). However, the maritime nature of such a contract does not extend to the storage of cargo, as this service is not an essential incident to navigation. *Howmet Corp.,* 320 F.Supp. at 977. As soon as navigation ceased to be central to the parties' relationship, the transaction lost its maritime nature and thus admiralty jurisdiction ceases to exist. *Id.*

Similarly, a contract to permit the use of a dock, furnished in the ordinary course of navigation, to a ship for the purpose of permitting the loading and unloading of cargo is clearly maritime in nature. In the instant case, according to the complaint, the cargo was unloaded on the pier prior to July 17, 1993, the date the cargo was allegedly damaged. Complaint ¶ 7. However, consistent with the premise that navigation must be central to the parties' relationship in order for admiralty jurisdiction to lie, once the voyage is complete and the cargo discharged, all maritime services have ended. *Id.* at 978. The storage of the cargo is entirely unrelated to navigation.

■ It is uncontested that defendant at all times relevant to this action operated a river terminal adjacent to the Mississippi river bank. The alleged damage to plaintiff's property occurred on land, at the terminal facility operated by defendant. Any breach of contract or negligence alleged by plaintiff must have occurred on land. Plaintiff does not suggest that defendant was negligent in its removal of plaintiff's goods from the river barge. Rather the implication from plaintiff's complaint is that defendant negligently stored plaintiff's goods or that defendant's storage of the goods somehow constituted a breach of the parties agreement. Any such injury occurring on land or damage sustained on land will give rise to a claim grounded in state law rather than admiralty law. *See, e.g., Whitcombe v. Stevedoring Services of America,* 2 F.3d 312, 313 (9th Cir.1993). This Court concludes that, notwithstanding the existence of a contractual relationship which either directly or indirectly pertains to the shipment of goods, suits against terminal operators for cargo damage or loss **while in storage** are governed by state rather than admiralty law. *Cf. Roco Carriers, Ltd. v. M/V NURNBERG EXPRESS,* 899 F.2d 1292 (2d Cir.1990); *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313 (2d Cir.1983) *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984); *Leather's Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir.1971).

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for lack of subject matter jurisdiction [Doc. # 8] is granted.

**IT IS FURTHER ORDERED** that all other pending motions in this matter are denied as moot.